(75 South. 358)

## MARTIN v. POWELL. (1 Div. 963.)

(Supreme Court of Alabama. April 26, 1917.)

1. APPEAL AND ERROR ⬤➟866(1)—REVIEW—PLEADING.

On plaintiff's appeal from a nonsuit in consequence of rulings adverse to plaintiff on demurrers to four pleas and to two replications to a plea, the sufficiency of a count of the complaint is not in any manner brought under review, and no consideration can be given it other than to construe it with a view to determine the questions presented as to the sufficiency of the pleas and replications.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3467–3473.]

2. CONTRACTS ⬤➟16 — PROMISE TO PAY — BREACH.

Where defendant promised a trustee to pay him an amount of money for plaintiff, though the trust remained executory because of defendant's failure to pay the money, defendant's promise to furnish the res was none the less a promise to the trustee, and, whatever effect defendant's default had to defeat the actual creation of a trust, it could not alter his promise to pay the trustee.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 49–56, 71–92.]

3. ASSUMPSIT, ACTION OF ⬤➟25—BURDEN TO SHOW PROMISE.

A count of the complaint in assumpsit averred that on a specified date the charter of a vessel stood in the name of a company, and that plaintiff then contracted with the charterer and another whereby the charterer transferred and assigned the charter to defendant, the consideration for the transfer being defendant's promise to pay to a bank as trustee a certain sum, half to be paid for the use and benefit of the charterer company, the other half for the use and benefit of plaintiff, and the count further averred that the charterer made the transfer of the charter in accordance with the contract, but that defendant failed and refused to pay. Held, that under the averments plaintiff assumed the affirmative obligation to show a promise to the bank.

[Ed. Note.—For other cases, see Assumpsit, Action of, Cent. Dig. §§ 153–155.]

4. PLEADING ⬤➟101—PLEA IN BAR.

Where plaintiff, suing in assumpsit, averred that defendant had promised to pay an amount of money to a bank as trustee for plaintiff, the allegation of a plea that plaintiff had previously to the action parted with all interest in any funds accruing in or to the said trust was an averment denying plaintiff's interest in the money defendant had promised to pay the trustee for plaintiff's benefit, and the plea was a plea in bar.

5. TRUSTS ⬤➟30½(1) — TRANSACTION CREATING TRUST—CONDITIONAL LIABILITY.

Where, upon nonarrival of a vessel by a stipulated date, the holder of the charter exercised his option to cancel the charter, and defendant charter holder's obligation to pay money for plaintiff was contingent on the existence of the charter, defendant's promise to pay never became available.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 41.]

6. CONTRACTS ⬤➟94(1) — FRAUD UPON RIGHT OF CONTRACTOR.

The doing of that which one validly provides in his contract may be done cannot be pronounced a fraud upon his right.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420, 428, 430, 1160.]

7. SHIPPING ⬤➟56—CHARTERS—ASSIGNABILITY.

Charter parties are the subject of assignment, unless some restriction is stipulated.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 126.]

8. PLEADING ⬤➟204(7) — DEMURRER TO PART OF PLEA.

In an action of assumpsit, demurrer will not lie to a part of a plea.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 489, 490.]

9. PLEADING ⬤➟204(7) — DEMURRER — PLEA PRESENTING BAR TO RECOVERY.

In an action of assumpsit, where a plea on its face presented a bar to a recovery under one count of the complaint, the trial court could not be put in error for overruling demurrer to it.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 489, 490.]

10. PLEADING ⬤➟216(1)—DEMURRER—SCOPE.

The sufficiency of replications must be determined in accordance with the only theory of their insufficiency presented through the demurrer to them.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 535, 536, 539.]

11. PRINCIPAL AND AGENT ⬤➟171(1)—RATIFICATION—ACCEPTANCE OF MONEY.

Where defendant promised to pay a bank as trustee for plaintiff an amount of money, and, by acts unauthorized by plaintiff and by an adjustment agreement with a third party, a fund was produced which was paid to the bank for plaintiff, the acceptance of the money from the bank by plaintiff with full knowledge of the arrangement from which the fund resulted was a ratification of the agreement of adjustment, just as if plaintiff had himself perfected the arrangement and accepted its fruits, and plaintiff could not be heard to assert or deny any purpose other than to ratify and confirm.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 644, 645, 653, 654.]

12. COMPROMISE AND SETTLEMENT ⬤➟22 — PLEADING—CONSIDERATION.

Averments of a plea in assumpsit that the right of a trustee to have or recover anything from defendant on account of the agreement in suit was in doubt and dispute, for that then and there defendant was in good faith contending and asserting that his obligation to pay was conditional upon safe arrival of a steamship at ports, and it was then very doubtful whether the steamship would ever arrive at either of the ports, etc., were sufficient to bring the plea within the rule that, where claims are in dispute, compromise and part payment thereof are sufficient consideration to support discharge.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. § 90.]

Appeal from Law and Equity Court, Mobile County; Saffold Berney, Judge.

Assumpsit by William H. Martin against W. A. Powell. From a judgment for defendant, plaintiff appeals. Affirmed.

The substance of count 2 sufficiently appears. The following pleas were interposed to the complaint:

(4) Before the bringing of this suit plaintiff transferred or assigned all of his interest under the said trust, and as a beneficiary thereof to a third party, and at the time of the bringing of this suit he was not entitled to have or receive anything from or through the said trustees under or because of said trust, for that he had

previously assigned and transferred all interest in any funds accruing in or to the said trust.

(7) On December 16, 1914, the Gulf Oil Cake Company assigned to defendant the charter which it had of the steamship Alida for one trip from Galveston, New Orleans, or Mobile, to a port in Denmark not south of Copenhagen, or to a safe port in Sweden, Goteborg to Ystad, inclusive, the freight rate provided by said charter being 24 shillings per ton, dead weight to the Denmark port, and one shilling extra per ton to the port in Sweden, and defendant agreed to take over the said charter on the basis of a freight rate of 40 shillings per ton, and to pay the difference between said rate to said City Bank & Trust Company, as trustee, the payment of said difference to become due on the safe arrival of said steamship Alida at Galveston, Mobile, or New Orleans, as ordered, to be secured by a lien on the ship's freight, and to be payable before sailing either in cash at Mobile or New York exchange to the City Bank & Trust Company as trustee. After said transfer to defendant he retransferred said charter to the New Orleans Export Company, Limited, at a still further increase of freight rate. The said charter provided, among other things, that should the said steamer not be ready to load on or before noon of March 25, 1915, the charterer should have the option of canceling the charter party. Said steamer did not arrive at either of said Gulf ports on or before March 25, 1915, and some time thereafter the Gulf Oil Cake Company entered into negotiations with the owner of said steamer for the cancellation of said charter party, and later negotiations were entered into between the Gulf Oil Cake Company, City Bank & Trust Company, as trustee, New Orleans Export Company, Limited, and the defendant which finally resulted in an agreement between said parties to the effect that said charter party should be canceled upon the owners of the steamship paying $15,000 for said cancellation, which $15,000 should be distributed as follows: $6,250 to the New Orleans Export Company, Limited; $940.50 to the brokers Arthur Page & Co.; $3,309.50 to defendant; and $4,500 to the trustee. On, to wit, June 16, 1915, said amount was paid and distributed according to the aforesaid agreement, and plaintiff, with full knowledge of said agreement, and of all the facts hereinabove alleged, accepted and took one-half of said sum of $4,500, viz. the sum of $2,250; wherefore defendant says plaintiff is not entitled to recover of him in this suit.

(8) Heretofore, to wit, on June 16, 1915, and before the bringing of this suit, the City Bank & Trust Company, as trustee, accepted in writing as in full settlement of defendant's obligation to defendant in this case the sum of $4,500, and plaintiff, with knowledge of said settlement, accepted as a beneficiary under said trust one-half of the amount so received by said trustee.

(9) Heretofore, to wit, on June 16, 1915, and before the bringing of this suit, the City Bank & Trust Company, as trustee, accepted as in full settlement of defendant's obligation sued upon in this case the sum of $4,500, and plaintiff, with knowledge of said settlement, accepted as a beneficiary under the said trust one-half of the amount so received by said trustee, and at the time aforesaid the right of said trustee to have or recover anything from defendant on account of the agreement sued upon was in doubt and dispute, for that then and there defendant was in good faith contending and asserting that his obligation to pay was conditioned upon the safe arrival of the steamship Alida at Galveston, New Orleans, or Mobile, under the charter party which had been assigned to defendant, and it was then very doubtful whether said steamship would ever arrive at either of said ports in fulfillment of said charter party, she then having passed her cancellation date provided in said charter party for almost three months.

Plaintiff demurred to the fourth plea as follows:

(1) Because the facts alleged in said plea are not sufficient to show that plaintiff was not the real party in interest.

(2) The facts alleged in said plea are not sufficient to show to whom it is intended to allege said assignment or transfer by plaintiff was made.

(3) It does not appear from said count of the complaint or from said plea that any trust ever attached to the fund sued upon in said count, or that plaintiff had ever transferred or assigned his interest in the debt sued upon in said count. (4) It appears from the allegations of said count that said trust had never attached, and that the rights of the trustee to receive said money had ceased, and it does not appear from said plea that plaintiff ever assigned the right which it sued upon, or that the assignment of the right given the trustee took place during the existence of any trust, or that any trust has since accrued. (5) Said plea sets up the matter of abatement and was filed after the time allowed by law for the filing of plea in abatement had expired, and the right to plea in abatement was waived by the filing of the general issues.

(6) Because it is not alleged in said plea that said assignment was by indorsement.

(7) Said plea is filed in bar, whereas the facts alleged in said plea are available to defendant only upon a plea in abatement.

The following are the demurrers to plea 7:

Because it does not appear from any allegation contained in the second count of the complaint, or in said plea, that the said trust ever vested in the City Bank & Trust Company so as to confer upon it any authority to settle or release the obligation sued upon.

(2) Because it does not appear from said plea that the said acceptance by the City Bank & Trust Company of said sum of money in full settlement of defendant's obligation was entered into by the City Bank & Trust Company while the said trust was still in force and effect.

(3) Because it does not appear from said complaint, or from said plea, that said City Bank & Trust Company had any power or authority to accept said sum of $4,500 in settlement of said obligation.

(4) Because it does not appear from said plea that there was any consideration for the acceptance of said sum of $4,500 by the City Bank & Trust Company in full settlement of defendant's said obligation, nor does it appear from said plea that said agreement of settlement was in writing.

(5) Because it does not appear that plaintiff accepted said one-half of the amount so received by said trustee with the intent to ratify said action of said trustee in making said settlement.

(6) Because it does not appear from said plea upon what understanding plaintiff accepted said one-half of the amount so received by the trustee.

(7) Because no sufficient facts are alleged in said plea to show that plaintiff accepted said one-half of the amount so received by said trustee under any agreement on the part of plaintiff that he would thereby ratify the action of the City Bank & Trust Company in making said settlement.

(8) Because said plea confesses the allegations of plaintiff's complaint and sets up no facts sufficient to show a ratification by plaintiff of said action on the part of the City Bank & Trust Company in accepting said settlement or any estoppel against the plaintiff from asserting said demand.

(9) Because it does not appear from said count of the complaint, or from said plea, that defendant was a party to said agreement of cancellation, or that plaintiff accepted said sum of $2,250 with the intent of ratifying said cancellation, or that plaintiff agreed to ratify said cancellation.

(10) Because it does not appear from said plea that plaintiff ever agreed to release defendant from said obligation which is sued upon in said count, or that he ever ratified any agreement by any other person to release defendant from said obligation.

(11) Because it does not appear from said plea with what intent or understanding said money was received by plaintiff.

The following demurrers were separately and severally filed to pleas 8 and 9:

(1) Because it does not appear from the allegations of said plea that said City Bank & Trust Company entered into any settlement in writing for the composition of the debt sued upon in plaintiff's complaint, nor does it appear that there was any consideration for the release of the debt sued upon.

(2) Because it does not appear that the City Bank & Trust Company had any authority from plaintiff to accept in writing, as in full settlement of defendant's obligation sued upon in this case, the said sum of $4,500, nor does it appear that plaintiff ratified said action of the City Bank & Trust Company.

(3) Because it affirmatively appears from each count of plaintiff's complaint that the City Bank & Trust Company had never become the trustee in said matter and had no authority to accept in writing, as in full settlement of defendant's obligation sued upon in this case, the said sum of $4,500, and no facts are alleged in said plea showing a ratification by plaintiff.

(4) Because it does not appear from said plea that there was any consideration for the alleged settlement, nor does it appear that plaintiff entered into any settlement in writing.

(5) Because it does not appear from said plea that at the time that plaintiff accepted one-half of said $4,500 he had full knowledge of all the material facts relating to said settlement.

(6) Because the mere acceptance of a part of the money due plaintiff did not amount to an acceptance of any part of the benefit of said settlement, but it was merely the taking of that which the plaintiff was entitled to receive irrespective of the conditions imposed.

(7) Because it does not appear from said plea that plaintiff intended to ratify the act of the City Bank & Trust Company in entering into said settlement, but, from aught that appears, the said money was paid over to him as a part of the amount due to him with an express stipulation that it was not accepted in full.

(8) Because it does not appear from said plea that the City Bank & Trust Company, in entering upon said settlement, undertook or purported to act as the agent of plaintiff.

(9) Because it appears from said plea that the City Bank & Trust Company purported to act as trustee, and not as the agent of plaintiff, and that said $4,500 was paid in settlement of the demand of the City Bank & Trust Company, and not in settlement of the demand of plaintiff which is here sued upon.

Plaintiff demurs to the ninth plea by defendant pleaded upon the following grounds:

(1) Because it is alleged in said plea that the right of said trustee to recover anything from defendant on account of the agreement sued upon was in doubt and dispute, but it does not appear that plaintiff's right to recover under said contract was in doubt and dispute.

(2) Because it does not appear from said plea that the City Bank & Trust Company, in entering upon said settlement, undertook or purported to act as the agent of plaintiff.

(3) Because it appears from said plea that the City Bank & Trust Company purported to act as trustee, and not as the agent of plaintiff, and that said $4,500 was paid in settlement of the demand of the City Bank & Trust Company, and not in settlement of the demand of plaintiff which is here sued upon.

(4) Because it does not appear from said plea that there was any consideration for the alleged settlement, nor does it appear that plaintiff entered into any settlement in writing.

(5) Because it does not appear from said plea that at the time that plaintiff accepted one-half of said $4,500 he had full knowledge of all of the material facts relating to said settlement.

(6) Because the mere acceptance of a part of the money due plaintiff did not amount to an acceptance of any part of the benefit of said settlement, but it was merely the taking of that which plaintiff was entitled to receive irrespective of conditions imposed.

(7) Because it does not appear from said plea that plaintiff intended to ratify the act of the City Bank & Trust Company in entering into said settlement, but, from aught that appears, said money was paid over to him as a part of the account due to him with an express stipulation that it was not accepted in full.

(8) It does not appear that there was any reasonable ground to doubt or dispute the indebtedness due plaintiff.

The replications to the fourth and seventh pleas were as follows:

(2) For further replication to seventh plea by defendant pleaded, plaintiff says that, although he accepted and took said sum of $2,250, he did not accept same in full payment or discharge of the obligation sued upon, but, on the contrary, expressly declined to do so, and received said sum only on account of the obligation sued on.

(3) For further replication defendant says that, although he accepted and took said sum of $2,250, same was paid to him on account of the obligation sued on, and with the understanding that he declined to receive same in full settlement of said demand.

Demurrers to these replications were as follows:

Said plea shows that plaintiff's trustee accepted the sum of $4,500 in full payment and discharge of defendant's obligation sued upon, that plaintiff had knowledge thereof, and with such knowledge accepted $2,250 of said money, and, these averments being confessed by the replications, plaintiff, by accepting the money, ratified and confirmed the aforesaid act of his said trustee, and this without regard to what may have taken place between plaintiff and said trustee at the time that the money was accepted by plaintiff from said trustee.

(2) Plaintiff having accepted from his trustee the $2,250 mentioned with knowledge that said trustee had collected and received the same in full payment and discharge of defendant's obligation sued upon, plaintiff as a matter of law could not accept said sum except under terms under which same had been collected by said trustee.

(3) By accepting said sum mentioned with knowledge of the source from which it came, plaintiff ratified and confirmed the acts of his trustee or agent in collecting the money, and, defendant's release and discharge pleaded in said plea being a part of the transaction whereby and whereunder said trustee or agent collected said money, plaintiff cannot repudiate that part of the transaction, but, on the contrary, his said confirmation of a part of said

transaction operates as a confirmation of all of the same.

(4) Plaintiff undertook to confirm and ratify that portion of the transaction of his trustee or agent under which the money received by plaintiff was obtained, and at the same time, while still holding the money, to repudiate that part of the transaction which consisted of defendant's release, and this plaintiff cannot do, for that he cannot take the benefits and repudiate the burdens of such a transaction by his agent, but, on the contrary, must reject or ratify such transaction in its entirety.

Harry T. Smith & Caffey, of Mobile, for appellant. Stevens, McCorvey & McLeod, of Mobile, for appellee.

McCLELLAN, J. The appellant was the plaintiff and the appellee the defendant in the court below to recover $6,424. In consequence of adverse rulings to the plaintiff on his demurrers to pleas numbered 4, 7, 8, and 9, and on demurrers to replications 2 and 3 to the seventh plea considered hereinafter, the plaintiff took a nonsuit. These pleas and replications will be reproduced in the report of the appeal as well as the demurrers to them. At least a good part of the differences between counsel may, we think, be eliminated through a correct interpretation of count 2 and some of the units of subsequent pleading to which reference has been made.

The subject-matter of the contract averred in count 2 was the Swedish steamer Alida. On the 16th day of December, 1914, the charter of the vessel stood in the name of the Gulf Oil Cake Company. On that date the plaintiff, Martin, entered into a contract with the charterer (and one B. T. Barrett, whose relation is not otherwise alluded to in the count) by the terms of which the charterer transferred and assigned the charter to the defendant, Powell. The averred consideration for the transfer of the charter was:

The "promise on the part of the defendant to pay to the City Bank & Trust Company, as trustee, the sum of $12,848, one-half of which was to be paid to the City Bank & Trust Company, for the use and benefit of the Gulf Oil Cake Company, and one-half of which was to be paid to the City Bank & Trust Company, for the use and benefit of the plaintiff."

It is further averred in the count that the charterer made the transfer of the charter in accordance with the contract, but that the defendant failed and refused to pay to the City Bank & Trust Company the said $12,848; that the defendant made an agreement with the Gulf Oil Cake Company, the assignor of the charter, by which that company relinquished its right to its one-half of the said sum of $12,848; whereupon, it is alleged, that company divested itself of any interest in this suit. It is then further averred:

"That the interest of the City Bank & Trust Company in said matter has ceased, for the reason that said money was to be paid to it in trust for the plaintiff in order that the said City Bank & Trust Company might pay to itself therefrom all orders which it might hold for the Gulf Oil Cake Company and the Gulf Ex-

200 ALA.—4

port Company, and the City Bank & Trust Company holds no such orders and has gone out of business, wherefore the plaintiff says that, the said trust having ceased and determined, the said sum of $6,424 is payable to the plaintiff."

[1] On this appeal the sufficiency of count 2 is not in any manner brought under review; and, other than to construe count 2 with a view to a determination of the questions presented touching the sufficiency of the mentioned pleas and replications, no consideration can be or is given the count. It appears that the promise declared on is an absolute promise of the defendant to pay to the Trust Company as trustee a certain sum, one-half of which was for the use and benefit of the plaintiff. The promise is not to the plaintiff. His asserted right is as the beneficiary of the promise to another, and is, hence, derivative only. The count then proceeds with averments calculated to exclude, and we assume for the occasion only accomplishing the exclusion of, the trustee as a party in interest to the promise averred. To otherwise state the effect of the count: It rests on an absolute promise made by the defendant, to pay a certain sum of money to a trustee for the use and benefit of the plaintiff; but the trust prospectively provided for and contemplated when the promise was made was limited in purpose, which limitation has so determined as to eliminate the object of the trust's provision in consequence of which the trustee had become divested of any interest in or concern for the keeping or enforcement of the promise thus made to the trustee alone. By the fourth plea the defendant asserted, in substance, that before this action was commenced the plaintiff had by assignment divested himself of "all interest in any funds accruing in or to the said trust." The demurrer, in one aspect, criticizes the plea on the ground that it only purports to assert the assignment by plaintiff of all interest in a trust fund; whereas the averred failure of the defendant actually to pay the fund that would in fact have consummated a trust would have afforded the indispensable corpus of a trust estate, defeated the creation of a trust which, until such payment was made, was executory only, and hence the plea's allegation of previous assignment by the plaintiff of all his interest in the trust fund was an averment that assumed to conclude against the plaintiff's right to sue for a trust fund that the complaint affirmatively disclosed never became such. This criticism of the plea is based upon the consideration that there is a distinction between an executory agreement or contract to create a trust and the actual creation of a trust: the existence of a trust res or subject-matter as the sine qua non to the actual creation of a trust. 39 Cyc. pp. 34, 35; 1 Perry on Trusts, § 100.

[2] The principle on which this objection to plea 4 is rested cannot have application in

this instance, because the right on which plaintiff declares in his second count is not a promise to him; is alone derived from, is alone traceable through, the defendant's promise to the trustee. If the trust remained executory, because of the defendant's failure to afford the trust res, the defendant's promise to afford the trust res was none the less a promise to the trustee; and whatever effect the defendant's default may have had to defeat the actual creation of a trust, it could not alter the only promise he made, viz. to pay the trustee.

[3, 4] Under the averments of count 2 the plaintiff assumed the affirmative obligation to show a promise to the trustee; and the plea's allegation that plaintiff had previous to the action parted with all "interest in any funds accruing in or to the said trust" was an averment that, if true, went to deny plaintiff's interest in the money defendant had promised to pay the trustee for plaintiff's benefit. This plea (4) is not a plea in abatement, but is a plea in bar of the plaintiff's right to recover, under the averments of count 2, as the beneficiary of a promise made to a trustee for his benefit. The plea (4) was not subject to the demurrer.

The court overruled appellant's demurrer to plea 7. There is no occasion to repeat in detail the construction already given count 2, to which reference must be had in determining the subjection of the plea to the demurrer interposed. The plea contradicts the count in the very important particular in which the count averred an absolute promise by defendant to pay the stated sum to the trustee. It appears from the plea that the sum to be paid to the trustee by defendant was the difference between the freight rate provided in the charter and the higher rate stipulated in the agreement for transfer of the charter by the Gulf Oil Cake Company to defendant, and that this sum was due "on the safe arrival of the said steamship Alida at Galveston, New Orleans, or Mobile as ordered, * * * and to be payable before sailing either in cash at Mobile or New York exchange to the City Bank & Trust Company, as trustee." Subsequently the defendant retransferred the charter to the New Orleans Export Company, Limited, at a further increase of freight rate. The charter provided that, if the vessel was not ready to load on or before noon of March 25, 1915, the charterer had the option to cancel the charter party. It seems to be accepted by counsel on both sides that this option, when its conditions existed, was available to any assignee of the charter. The plea avers that the steamer did not arrive at any of the ports stipulated by the date specified. The condition to the creation of the option having come to pass, the option to cancel the charter party was subject to exercise, and, if exercised, would result in the defeat of the happening of the contingency upon which the defendant's promise to pay the stated sum

to the trustee was rested. The plea proceeds with affirmative averments to the effect that by agreement made after the date the vessel should have been ready to load, between the owners of the vessel and the trustee, the New Orleans Export Company, and the Gulf Oil Cake Company, the charter was canceled, the owners paying for the cancellation the sum of $15,000, which, it was agreed, was to be apportioned in the amounts specified in the plea, $4,500 being the sum paid to the trustee. The plea concludes to the further effect that the "plaintiff, with full knowledge of said arrangement, and of all of the facts hereinabove alleged, accepted and took one half of said $4,500. * * *" Apart from the question made by the concluding allegations that seek to avail of rules of law applicable in cases where a party consciously, intentionally accepts benefits under a previous unauthorized agreement touching his interest or contract, the plea had antecedently set up matters of contract and fact that went to show that the absolute promise declared on in the second count was not made, but that, on the contrary, the promise to pay was contingent, and that that contingency did not happen because of the failure of the vessel to arrive as stipulated, and, in turn, that the obligation to bring it to the place designated was abrogated by an agreement to which the assignee of the charter (the New Orleans Export Company) was a party, and in which company resided the right to exercise the option to abrogate the charter.

[5] If, as is averred in the plea (7), the arrival of the vessel did not occur by the date stipulated, and if, as is averred in the plea, the holder of the charter then had the option to cancel the charter, and if the repository of the option exercised the power to cancel, the contingent promise to pay the trustee never became available to the plaintiff, or to the trustee for that matter, as the source or measure of an obligation against the defendant, for the reason that the very terms of the contract the plea asserts the obligation to pay was contingent on was an event that did not take place. It would seem to be quite clear that the proof of these allegations in plea 7 would be a complete defense to the absolute promise declared on in count 2; for, "when a day is appointed for the payment of money, and this is to happen after the performance of that which is the consideration of it, no action can be maintained before the performance." 2 Elliott on Contr. § 1577. This effect of the plea's averment (apart from its concluding allegations of the acceptance of the money by the plaintiff) was not made the subject of criticism in any ground of demurrer interposed to plea 7. It does not now appear on what ground demurrer to it could be put, unless some basis for an objection exists in the proposition with which the following statement in the brief for appellant concluded:

"The next allegation to be found in the plea is that the defendant retransferred the charter to the New Orleans Export Company at a still further increase in the freight rate. The only effect of this allegation is to show that the defendant thereby put it in the power of the New Orleans Export Company to defeat the happening of the condition precedent by enabling the New Orleans Export Company to cancel the charter party without his consent. The defendant also thereby voluntarily vested the option to cancel the charter party in the New Orleans Export Company, and, having thus put it in the power of a third person to defeat the condition precedent, the obligation to make the payment became absolute; for no man who has contracted to pay upon the arrival of a vessel can defeat his obligation by himself canceling the charter party by agreement with the owners for a consideration; indeed, such a performance as this would amount to a fraud."

[6, 7] The doing of that which one validly provides in his contract may be done cannot be pronounced a fraud upon his right. Harton v. Amason, 195 Ala. 594, 71 South. 180, 183. The fraud suggested in the quoted extract from the brief is necessarily predicated of a wrong, a breach of duty against the plaintiff; otherwise he could not be heard to complain. According to the averments of the plea, the contract out of which the promise declared on arose was contingent upon the happening of an event, and the happening of that event, after a stipulated date, was made to depend upon the express right of the holder of the charter to exercise the option to cancel it, which right was as much an element of the contract as any other feature of it. In consequence the obligations and rights of the parties were as defined in the subject-matter of the transfer, viz. the charter, and in the agreement in which the averred contingent promise to pay was made; a contingency that was contemplated and provided for in the charter. The effect of the engagement might, of course, have been avoided, as between the assignors or assignees, by appropriate stipulation against the right of the holder of the charter to exercise the option according to the holder's own ungoverned will; but it does not appear from the plea's allegations that any such restriction was put upon the contractual right passing to the assignee of the charter. Such instruments are held to be the subject of assignment unless some restriction is stipulated. 36 Cyc. p. 60.

[8, 9] Since demurrer will not lie to a part of a plea in an action of this character (Corpening v. Worthington, 99 Ala. 541, 12 South. 426; L. & N. R. R. Co. v. McCool, 167 Ala. 644, 646–647, 52 South. 656), and since in the aspect stated plea 7 on its face presented a bar to a recovery under count 2 the court cannot be put in error for overruling the demurrer to it.

The court sustained demurrers to special replications 2 and 3 to plea 7. These replications only purport to reply to that feature of the plea wherein it is averred that the plaintiff, with knowledge of the facts, accepted from the trustee the amount stated therein. The grounds of the demurrers to the replications manifest, unmistakably, the defendant's acquiescence in, if not acceptance of, the plaintiff's interpretation of plea 7; an interpretation that confined its effect to the assertion of the defense predicated of the plaintiff's receipt, with knowledge of the facts, of the stated sum from the trustee.

[10] No ground of the demurrers to the replications pointed their inefficiency as presenting matter in avoidance of the defense otherwise set up in the plea. Their sufficiency must be determined in accordance with the only theory of their insufficiency presented through the demurrer. Both of these replications sought to avoid the effect of the ratification asserted in the concluding part of the seventh plea through the therein averred acceptance by plaintiff of the named sum, with knowledge of the facts, by alleging that the sum so paid and received was not accepted in full discharge of the obligation sued on; that it was only accepted on account of the obligation sued on. It appears that the sum accepted by plaintiff was paid to him by the trustee; and it also appears from count 2 and from the plea (7) that the payment to the plaintiff contemplated was to be made by the trustee. The issue of law raised by the conjoint effect of the demurrers to the special replications, of the averments of the special replications, and of the plea now under consideration, comes, as we understand the agreement to this: The defendant asserts that the acceptance by the plaintiff of the sum, with knowledge of the facts, absolutely concludes him to implead the defendant as upon a liability existing up to the time of such receipt of the money; while, on the other hand, the plaintiff asserts that, since the trustee was the source or medium of a payment of the money to plaintiff under the contract, and since the sum referred to in the plea was paid to the plaintiff by the same trustee, the implication of ratification from the act of accepting, with full knowledge of the facts, the money, is not exclusively conclusive, as the defendant (appellee) contends, but that, since the plaintiff was entitled under the contract to be paid by the trustee a sum even greater than that he accepted from the trustee, and since ratification is a matter of intention, the act of receiving the sum alleged was, at best, so equivocal in its effect with respect to ratification as that the plaintiff's real intent might be disclosed by his declarations or reservations made at the time the money was accepted, or, to attempt a more concise statement, that ratification through confirmation of an act of one previously unauthorized to represent the party against whom the ratification is alleged or to whom ratification is sought to be imputed cannot be conclusively implied where the effect of the act upon which the claimed ratification is rested may be referred to a status of intent inconsistent with a purpose to confirm that which had been done by

another without previous authorization. This doctrine, for the present application of which the appellant contends, has been often recognized. 31 Cyc. pp. 1267–1269, and notes, and authorities noted on the brief for appellant. Applying the doctrine indicated, it is said in brief for appellant:

" * * * The plaintiff, being entitled to receive the money which he in fact received from the City Bank in part payment of the debt owing to him by the defendant without assenting to the unauthorized act of his agent, cannot be held to have ratified that unauthorized act by doing what he had a perfect right to do."

Our opinion is that the doctrine urged is not applicable to the presently pertinent state of fact set forth in plea 7. The averments in that connection are that the plaintiff had "full knowledge of said arrangement, and of all the facts hereinabove alleged," which included, necessarily, the affirmation that when he accepted the sum stated the plaintiff knew that the source of the fund thus delivered to him by the trustee was not the defendant, but was the owner who paid a gross sum, of which this money so received by the plaintiff was a part, in consequence of the adjustment effected between the owners and the parties designated in the plea. If the money accepted by the plaintiff had been paid to the trustee by the defendant, whose promise to pay is the basis of the cause declared on in the second count, the application of the doctrine for the plaintiff might be invoked.

[11] It necessarily results from the averments of the plea that the acceptance of the money by the plaintiff, with the knowledge averred, was a ratification of previously unauthorized acts and agreement of adjustment producing the fund thus paid to the plaintiff, just as if the plaintiff had himself effected the arrangement and accepted its fruits. 2 C. J. pp. 467, 468, 504. Since the plaintiff's averred act in accepting, with full knowledge of the facts, the fruits of the arrangement, could not possibly evince, or be referable to, any other intent than to confirm that which he had not previously authorized, he could not be heard to assert or avow another inconsistent purpose, or the absence of an intent that would contradict the only possible purpose he could have entertained when, fully advised of the facts as he is alleged to have been, he accepted the fruits of the arrangement which fully terminated the contract out of which the defendant's promise arose. The court did not err in sustaining the demurrer to replications 2 and 3 to the seventh plea.

Plea 8 avers the composition, the settlement in full of defendant's obligation, viz. that sued on, and the plaintiff's acceptance, before suit brought of the fruits of the settlement "with knowledge of the settlement." It is not necessary to repeat the construction, already stated, of count 2; the ascertainment of the particular promise on which it declares. The visitation of the conclusions of law before set down leads to the result that there was no merit in grounds numbered 3, 6, 7, and 9. If Code, § 3974, has application to the matter asserted in plea 8, it is met by the averment in the plea that the settlement of the plaintiff's claim (sued on) by the City Bank & Trust Company was "accepted in writing" by the company; thus, we think, rendering ineffectual the grounds of demurrer asserting the criticism that the plea did not show any consideration for the composition. The phrase "accepted in writing" undoubtedly refers to the company, not to the plaintiff; and this is so clear that no occasion is afforded by the plea to construe its averments in this regard with disfavor to the pleader. It appears from the plea that plaintiff accepted the fruits of the settlement of his claim against the defendant "with knowledge of said settlement." The manifest, necessary effect of the allegations of the plea is that the company, as trustee, assumed to act for plaintiff in settling the claim sued on, and that, having acted (without authority), the plaintiff accepted the fruits of the settlement with knowledge that the previously unauthorized actor had assumed to make and had made a composition of plaintiff's claim against the defendant, viz. that subsequently sued on; thereby confirming the previously unauthorized act of the company. It is not conceivable, we think, that the plaintiff was otherwise than adequately informed in order to effect a ratification by him of the previously unauthorized act of the company in respect of his claim against the defendant if, as the plea avers, the plaintiff had knowledge of the settlement of defendant's obligation to the plaintiff. Knowledge of such a settlement—a "full settlement" is the necessary effect of the reference accomplished by the use of the word "said" in the allegation—undoubtedly comprehended all that was requisite to the creation of a status of information that could serve to afford the basis for an advised confirmation, a ratification of the previously unauthorized act wrought by an acceptance of the fruits thereof. The court properly overruled the demurrer to the eighth plea.

Plea 9 was not subject to the demurrer. In the particulars that it avers the bases of and facts for a ratification of the previously unauthorized acts of the trustee by the acceptance of the fruits thereof, we need add nothing to what has already been said on that subject.

[12] The additional averments therein, set in to show a consideration for the unwritten composition effected, are sufficient under the doctrine of Hand Lumber Co. v. Hall, 147 Ala. 561, 41 South. 78. The facts and circumstances averred as disclosing the disputed character of the claim—the uncertainty of its availability as an obligation against defendant—served to bring that feature of the plea within the rule that:

"Where the claims are in dispute, the compromise and part payment thereof are sufficient

consideration to support the discharge." Hand Lumber Co. v. Hall, supra.

No error being shown, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.