729 So.2d 314 (1999)
Dorothy HOLMES
v.
Terrill SANDERS, administrator of the estate of Major Holmes, deceased.
No. 1970637.
Supreme Court of Alabama.
January 15, 1999.
*315 Frank M. Wilson and DeLacie C. Hester of Beasley, Wilson, Allen, Crow & Methvin, P.C., Montgomery, for appellant.
Rhonda Pitts Chambers and Ahrian D. Tyler of Rives & Peterson, P.C., Birmingham; and Mary R. Amos of Amos & Associates, Birmingham, for appellee.
MADDOX, Justice.
This case involves the distribution of settlement proceeds in a civil action filed under the Federal Employer's Liability Act (FELA), where the plaintiff died without having signed the settlement agreement.
Major Holmes was employed by Burlington Northern Railroad. In 1996, he sued Burlington Northern under the FELA, claiming personal injuries arising from alleged exposure to asbestos. On August 2, 1996, Holmes and his attorney orally agreed to settle his FELA claim with Burlington Northern. On August 15, 1996, he died intestate, survived by his wife, Dorothy Holmes, and by both dependent and nondependent children. At the time of his death, the parties had not reduced the agreement to writing.
After expressing some initial resistance, Dorothy Holmes consented to the terms of the oral settlement agreement. The probate court, on April 11, 1997, held a hearing and heard testimony from Dorothy Holmes, as well as the administrator of the estate and the guardian ad litem appointed for the minor children, to determine the validity of the settlement agreement. After considering the evidence, the probate court found that Dorothy Holmes had ratified and confirmed the settlement agreement, and it ordered that the funds from the settlement be deposited into an estate account pending distribution.
Dorothy Holmes then moved the probate court for a distribution of the settlement funds in accordance with the FELA, arguing that she and her dependent children were entitled to all of the funds. Daryl Holmes and Sharyl Holmes, nondependent children of the decedent from a previous marriage, moved the probate court to distribute the settlement funds according to Alabama law governing intestate succession.
The probate court, on November 14, 1997, held a hearing to determine whether the funds should be distributed according to the FELA or in accordance with Alabama's laws of intestate succession. At that hearing, the parties offered no testimony or evidence. Instead, counsel for both sides referred to the testimony previously heard by the probate court.
The probate court held that the oral agreement entered into by Major Holmes and Burlington Northern on August 2, 1996, constituted a final settlement; that the settlement funds, therefore, were part of Mr. Holmes's estate; and that they were subject to distribution under Alabama's intestacy laws.
Two issues are now presented to this Court. First, whether the oral agreement of August 2, 1996, constituted a valid and, *316 therefore, a final settlement agreement between Major Holmes and Burlington Northern. If so, then, second, whether the settlement funds should be distributed according to the substantive law outlined by the FELA or by Alabama's laws of intestate succession.

Standard of ReviewOre Tenus Rule
When a lower court's judgment is based upon findings of fact based on ore tenus evidence, that judgment is presumed correct. Reed v. Light, 613 So.2d 393, 393 (Ala.1993).
The probate court did not rely upon oral testimony in its hearing held to determine how to distribute the settlement funds, but instead relied upon oral testimony it had heard at an earlier, related hearing. It seems clear that the probate court's findings of fact and conclusions of law were based upon ore tenus evidence that court had heard in the earlier hearing. Therefore, it seems that the probate court based its judgment upon those findings. Its order regarding the distribution of the settlement funds, therefore, is entitled to a presumption of correctness, and should be reversed "only if [it] is found to be plainly and palpably wrong, after a consideration of all of the evidence and after making all inferences that can logically be drawn from the evidence." Reed v. Light, 613 So.2d 393, 393 (Ala.1993). For reasons we discuss below, we conclude that the probate court's finding that the oral agreement constituted a final settlement and, therefore, its conclusion that the settlement funds were part of the estate, is not plainly and palpably wrong.

Compromise and Settlement
This Court has held that all settlement agreements entered into by attorneys and occurring at the trial level are governed by § 34-3-21, Ala.Code 1975. Ex parte Sims, 627 So.2d 380 (Ala.1993). Section 34-3-21 states: "An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."
The record reflects that Mr. Holmes, with the assistance, advice, and counsel of his attorney, entered into an oral agreement with Burlington Northern on August 2, 1996. However, the parties did not reduce the agreement to writing before Mr. Holmes's death on August 15, 1996. The record contains no evidence indicating that the agreement was made in open court; there is no notation of it upon the minutes of the court; and the agreement was not in writing. Thus, the oral agreement fails to comport with the requirements of § 34-3-21, but that does not mean that the agreement is not legally enforceable. Certain principles of Alabama common law dealing with contracts and agency make the oral agreement valid under the facts presented here.

StatutesConstruction
Section 1-3-1, Ala.Code 1975, states:
"The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except from time to time it by be altered or repealed by the legislature."
In light of this statute, this Court has recognized that Alabama is "a common-law state." Weaver v. Hollis, 247 Ala. 57, 22 So.2d 525 (1945). This Court has also recognized that
"the common law is the base upon which all of the laws of this State have been constructed, and when our courts are called upon to construe a statute,when they are called upon to ascertain and declare the legal effect and meaning of a legislative enactment,they must read the statute in light of the common law."
Id. Additionally, we presume "that the legislature did not intend to make any alteration in the law beyond what it declares either expressly or by unmistakable implication." Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971).
Accordingly, § 34-3-21 is subject to these principles of statutory construction. This Court must read § 34-3-21 in light of the relevant common law. Nothing in the statute indicates that the legislature intended to abrogate the varied rules and principles encompassing the common law of contracts and agency. If the legislature had intended to so *317 act, that body would have made its intention evident and unmistakable. Having concluded that the statute is to be construed in accordance with the common law, we must analyze the common-law rules applicable to the facts presented here.

Ratification
Ratification is a well-settled principle of the common law. 2A C.J.S. 2d Agency, § 63 (1972). In Alabama, "[i]t is the law that one may ratify the acts of another not done in the name of the former." Tuskegee Institute v. May Refrigeration Co., 344 So.2d 156, 159 (Ala.1977). Specifically, this Court has recognized before that where a party accepts "with full knowledge of the facts, the fruits of [an] arrangement ... he [cannot] be heard to assert or avow another inconsistent purpose." Martin v. Powell, 200 Ala. 46, 75 So. 358 (1917). With regard to contract law, this Court has stated that "[a] party, by his actions and acceptance of the benefits of a contract and by operating under that contract, may ratify and confirm it, even though his actual signature is not affixed." Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 305 (Ala.1986). Our courts have, rightly, recognized that a wife can ratify the actions of her husband. See Stevenson v. Buryn, 530 So.2d 832 (Ala.Civ.App.1987).
Dorothy Holmes has received the benefits of the agreement entered into by her husband on August 2, 1996. The trial court specifically found in its order of May 21, 1997, that Dorothy Holmes had "ratified and confirmed the settlement," and it is clear from the record that the settlement finally approved by the trial court was the settlement entered into by Major Holmes on August 2, 1996.
Based upon the evidence in the record, it appears that Dorothy Holmes's ratification and confirmation of the terms of the August 2 settlement, in effect, validated that agreement so that it became legally enforceable. Although the settlement agreement was not signed by Mr. Holmes, and no entry regarding it was made in the record, as specified by the provisions of § 34-3-21, those facts do not necessarily make the agreement unenforceable.
The evidence supports the probate court's finding that Dorothy Holmes ratified and confirmed the terms of her husband's August 2 agreement and its conclusion that the settlement funds were part of his estate. Accordingly, we must determine how the funds should be distributed, in the context of the facts before us.

Federal Employers' Liability Act
Section 51 of the FELA states, in pertinent part, that
"[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee."
45 U.S.C. § 51 (1939). In 1910, Congress added § 59, which states:
"Any right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and if none, then of such employee's parents, and if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."
45 U.S.C. § 59 (1939). In St. Louis, Iron Mountain & Southern Ry. v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915), the Supreme Court discussed, in detail, the evolution of the FELA. The Supreme Court pointed out that the original act of 1908 had provided two causes of action. Id. at 656, 35 S.Ct. 704. The first cause of action was created for the benefit of the injured employee and "invests the injured employee with a right to such damages as will compensate him for his personal loss and suffering." Id. The second cause of action is predicated upon the death of the injured employee, and it invests the personal representative of the decedent "with a right to such damages as will compensate" the surviving spouse, children, parents, or dependent next of kin. Id. If the injured employee died, then the first cause of action died with the injured employee. Id. With the addition of § 59, Congress *318 allowed the first cause of action to survive should the employee die.
As is evident, the FELA governs the availability and distribution of proceeds to certain persons only if the employee dies before resolution of the action. The Act makes no provision for distribution of proceeds once a FELA action is resolved during the life of the injured employee. Because the Act is silent in this respect, state law governs the distribution of any proceeds in such a situation.

Law of Intestate Succession
If a person dies intestate in Alabama, §§ 43-8-40 to -42 govern the distribution of that person's estate. Because the settlement agreement of August 2, 1996, was legally enforceable, the settlement amount to which Mr. Holmes was entitled effectively became a part of his estate upon his death. Because he died without a will, the settlement amount is to be distributed under Alabama's laws of intestate succession. Accordingly, the probate court's order of distribution is affirmed.
AFFIRMED.
HOOPER, C.J., and SHORES, HOUSTON, SEE, and LYONS, JJ., concur.
COOK, J., concurs in the result.
KENNEDY, J., dissents.
KENNEDY, Justice (dissenting).
The Federal Employer's Liability Act (FELA) provides for two separate and distinct causes of actionone that compensates an injured employee for his personal loss and one that compensates a specified class of beneficiaries for their pecuniary loss if the employee dies as a result of his injuries. 45 U.S.C. § 51 (1939). The first cause of action survives an employee's death and, in a case such as this one, the administrator of the employee's estate "may recover in the same action not only for the pecuniary loss sustained by the beneficiaries, but also damages on account of [the] conscious pain and suffering of [the] deceased." Chafin v. Norfolk & W. Ry., 80 W.Va. 703, 708, 93 S.E. 822, 824 (1917) (citing Kansas City Sou. Ry. v. Leslie, 238 U.S. 599, 35 S.Ct. 844, 59 L.Ed. 1478 (1915); St. Louis, I.M. & S. Ry. v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915); Great Northern Ry. v. Capital Trust Co., 242 U.S. 144, 37 S.Ct. 41, 61 L.Ed. 208 (1916)). Any damages recovered on that cause of action are distributed to the eligible beneficiaries under the provisions of FELA and not through the deceased employee's estate. Frabutt v. New York, 84 F.Supp. 460 (W.D.Pa.1949). In fact, the personal representative of the employee's estate is not given any cause of action on behalf of the estate, but is invested as statutory trustee for the surviving beneficiaries designated under FELA. Burlington Northern R.R. v. Warren, 574 So.2d 758, 762 (Ala.1990). It is important to note that the designated survivors have no power to maintain an action under FELA, American R.R. v. Birch, 224 U.S. 547, 32 S.Ct. 603, 56 L.Ed. 879 (1912), and, therefore, have no power to settle claims brought under FELA. Burlington Northern, 574 So.2d at 762; Matz v. Erie-Lackawanna R.R., 2 Ohio App.2d 136, 207 N.E.2d 250 (1965).
Major Holmes sued his employer to collect under FELA for his personal loss and the pain and suffering that accompanied his illness; however, before that action could be resolved, Major Holmes died. As the majority discusses in its opinion, the settlement agreement made between Major Holmes and Burlington Northern Railroad was not reduced to writing or entered on the record before his death, as required by § 34-3-21, Ala.Code 1975. However, the majority avoids strictly interpreting § 34-3-21, and thus avoids distributing the proceeds under the FELA guidelines, by affirming the trial court's application of the common-law doctrine of ratification.
The trial court held that the agreement of Major Holmes's surviving spouse, Dorothy Holmes, to settle the FELA action related back and acted as a ratification of her husband's earlier settlement of the case. In affirming that decision, the majority concludes that because Dorothy Holmes received the "benefit" of the settlement, she had the power to ratify and confirm the settlement originally agreed to by her husband. The majority also cites the trial court's findings and states that those findings *319 are entitled to a presumption of correctness. I believe, however, that the trial court made an error of law in determining that Dorothy Holmes, one of several people who would receive money from Major Holmes's estate, had the power to ratify the settlement agreed to by her husband. The standard suggested by the majority would allow anyone "benefiting" or taking through the estate, not just the personal representative, to ratify and confirm this kind of settlement to the benefit of the estate. This not only extinguishes the second cause of action, which is based on the pecuniary loss of the designated survivors, but also allows an end run around one express purpose of FELA, to provide benefits to the dependent survivors of deceased employees.
In regard to the power of the personal representative, as discussed above, the nature of the FELA claims and the role of the personal representative changed drastically upon Major Holmes's death. Although a party's personal representative can generally ratify a settlement that was entered into but not finalized before the party's death, this kind of ratification operates in those instances where the cause of action survives the party's death to the benefit of the party's estate. See Kresnak v. Kresnak, 190 Mich. App. 643, 476 N.W.2d 650 (1991). Although under FELA the deceased employee's cause of action survives his death, the cause of action survives to the benefit of the beneficiaries and not the estate. However, it must be remembered that the beneficiaries do not have the right to settle a claim based on such a cause of action, because only the deceased employee's personal representative can settle a FELA action as trustee and on behalf of the designated beneficiaries.[1]
This aspect alone calls into question the settlement document signed by Dorothy Holmes. But more troubling is the fact that the clear language of the settlement agreement signed by Ms. Holmes indicates that she agreed to settle, on behalf of the beneficiaries, those claims arising "as a result of the death of Major Holmes, Jr." Under FELA, the only cause of action resulting from the death of an employee belongs solely to the beneficiaries designated under FELA and any proceeds based on this cause of action are, clearly, to be distributed under the provisions of that statute and not through the deceased's estate.
Based on the foregoing, I respectfully dissent.
NOTES
[1] It concerns me that Major Holmes's personal representative testified that the enforcement of the settlement would be to the benefit of the estate. I found no indication that the personal representative gave any thought to his role as statutory trustee on behalf of the designated beneficiaries under FELA.