This case involves the distribution of settlement proceeds in a civil action filed under the Federal Employer's Liability Act (FELA), where the plaintiff died without having signed the settlement agreement.
Major Holmes was employed by Burlington Northern Railroad. In 1996, he sued Burlington Northern under the FELA, claiming personal injuries arising from alleged exposure to asbestos. On August 2, 1996, Holmes and his attorney orally agreed to settle his FELA claim with Burlington Northern. On August 15, 1996, he died intestate, survived by his wife, Dorothy Holmes, and by both dependent and nondependent children. At the time of his death, the parties had not reduced the agreement to writing.
After expressing some initial resistance, Dorothy Holmes consented to the terms of the oral settlement agreement. The probate court, on April 11, 1997, held a hearing and heard testimony from Dorothy Holmes, as well as the administrator of the estate and the guardian ad litem appointed for the minor children, to determine the validity of the settlement agreement. After considering the evidence, the probate court found that Dorothy Holmes had ratified and confirmed the settlement agreement, and it ordered that the funds from the settlement be deposited into an estate account pending distribution.
Dorothy Holmes then moved the probate court for a distribution of the settlement funds in accordance with the FELA arguing that she and her dependent children were entitled to all of the funds. Daryl Holmes and Sharyl Holmes, nondependent children of the decedent from a previous marriage, moved the probate court to distribute the settlement funds according to Alabama law governing intestate succession.
The probate court, on November 14, 1997, held a hearing to determine whether the funds should be distributed according to the FELA or in accordance with Alabama's laws of intestate succession. At that hearing, the parties offered no testimony or evidence. Instead, counsel for both sides referred to the testimony previously heard by the probate court.
The probate court held that the oral agreement entered into by Major Holmes and Burlington Northern on August 2, 1996, constituted a final settlement; that the settlement funds, therefore, were part of Mr. Holmes's estate; and that they were subject to distribution under Alabama's intestacy laws.
Two issues are now presented to this Court. First, whether the oral agreement of August 2, 1996, constituted a valid and, *Page 316 
therefore, a final settlement agreement between Major Holmes and Burlington Northern. If so, then, second, whether the settlement funds should be distributed according to the substantive law outlined by the FELA or by Alabama's laws of intestate succession.
 Standard of Review-Ore Tenus Rule
When a lower court's judgment is based upon findings of based on ore tenus evidence that, judgment is presumed correct. Reed v.Light, 613 So.2d 393, 393 (Ala. 1993).
The probate court did not rely upon oral testimony in its hearing held to determine how to distribute the settlement funds, but instead relied upon oral testimony it had heard at an earlier, related hearing. It seems clear that the probate court's findings of fact and conclusions of law were based upon ore tenus evidence that court had heard in the earlier hearing. Therefore, it seems that the probate court based its judgment upon those findings. Its order regarding the distribution of the settlement funds, therefore, is entitled to a presumption of correctness, and should be reversed "only if [it] is found to be plainly and palpably wrong, after a consideration of all of the evidence and after making all inferences that can logically be drawn from the evidence." Reed v. Light, 613 So.2d 393, 393 (Ala. 1993). For reasons we discuss below, we conclude that the probate court's finding that the oral agreement constituted a final settlement and, therefore, its conclusion that the settlement funds were part of the estate, is not plainly and palpably wrong
 Compromise and Settlement
This Court has held that all settlement agreements entered into by attorneys and occurring at the trial level are governed by § 34-3-21, Ala. Code 1975. Ex parte Sims, 627 So.2d 380 (Ala. 1993). Section 34-3-21 states: "An attorney has authority to bring his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on this minutes of the court."
The record reflects that Mr. Holmes, with the assistance, advice and counsel of his attorney, entered into an oral agreement with Burlington Northern on August 2, 1996. However, the parties did not reduce the agreement to writing before Mr. Holmes's death on August 15, 1996. The record contains 110 evidence indicating that the agreement was made in open court; there is no notation of it upon the minutes of the court; and the agreement was not in writing. Thus, the oral agreement fails to comport with the requirements of 34-3-21, but that does not mean that the agreement is not legally enforceable. Certain principles of Alabama common law dealing with contracts and agency make the oral agreement valid under the facts presented here.
 Statutes-Construction
Section 1-3-1, Ala. Code 1975, states:
 "The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except from time to time it by be altered or repealed by the legislature."
In light of this statute, this Court has recognized that Alabama is "a common-law state." Weaver v. Hollis, 247 Ala. 57,22 So.2d 525 (1945). This Court has also recognized that:
 "the common law is the base upon which all of the laws of this state have been constructed, and when our courts are called upon to construe a statute, — when they are called upon to ascertain and declare the legal effect and meaning of a legislative enactment, — they must read the statute in light of the common law."
Id. Additionally, we presume "that the legislature did not intend to make any alteration in the law beyond what it declares either expressly or by unmistakable implication." Beasley v. MacDonaldEngineering Co., 287 Ala. 189, 249 So.2d 844 (1971).
Accordingly, § 34-3-21 is subject to these principle of statutory construction. This Court must read § 34-3-21 in light of the relevant common law. Nothing in the statute indicates that the legislature intended to abrogate the varied rules and principles encompassing the common law of contracts and agency. If the legislature had intended to so *Page 317 
act, that body would have made its intention evident and unmistakable. Having concluded that the statute is to be construed in accordance with the common law, we must analyze the common-law rules applicable to the facts presented here.
 Ratification
Ratification is a well-settled principle of the common law. 2A C.J.S. 2d Agency, § 63 (1972). In Alabama, "[i]t is the law that one may ratify the acts of another not done in the name of the former." Tuskegee Institute v. May Refrigeration Co.,344 So.2d 156, 15 (Ala. 1977). Specifically, this Court has recognized before that where a party accepts "with full knowledge of the facts, the fruits of [an] arrangement . . . he [cannot] be heard to assert or avow another inconsistent purpose." Martin v.Powell, 200 Ala. 46, 75 So. 358 (1917). With regard to contract law, this Court has stated that "[a] party, by his actions and acceptance of the benefits of a contract and by operating under that contract, may ratify and confirm it, even though his actual signature is not affixed." Lawler Mobile Homes. Inc. v. Tarver,492 So.2d 297, 305 (Ala. 1986). Our courts have, rightly, recognized that a wife an ratify the actions of her husband. SeeStevenson v. Buryn, 530 So.2d 832 (Ala.Civ.App. 1987).
Dorothy Holmes has received the benefits of the agreement entered into by her husband on August 2, 1996. The trial court specifically found in its order of May 21, 1997, that Dorothy Holmes had "ratified and confirmed the settlement," and it is clear from the record that the settlement finally approved by the trial court was the settlement entered into by Holmes on August 2, 1996.
Based upon the evidence in the record, it appears that Dorothy Holmes's ratification and confirmation of the terms of the August 2 settlement, in effect, validated that agreement so that it became legally enforceable. Although the settlement agreement was not signed by Mr. Holmes and no entry regarding it was made in the record, as specified by the provisions of § 34-3-21, those facts do not necessarily make the agreement unenforceable.
The evidence supports the probate court's finding that Dorothy Holmes ratified and confirmed the terms of her husband's August agreement and its conclusion that the settlement funds were part of his estate. Accordingly, we must determine how the funds should be distributed, in the context of the facts before us.
 Federal Employers' Liability Act
Section 51 of the FELA states, in pertinent part, that:
 "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee."
45 U.S.C. § 51 (1939). In 1910, Congress added § 59, which states"
 "Any right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and if none, then of such employee's parents, and if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."
45 U.S.C. § 59 (1939). In St. Louis, Iron Mountain SouthernRy, v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (191), the Supreme Court discussed, in detail, the evolution of the FELA. The Supreme Court pointed out that the original act of 1908 had provided two cause of action. Id. at 656, 35 S.Ct. 704. The first cause of action was created for the benefit of the injured employee and "invests the injured employee with a right to such damages as will compensate him for his personal loss and suffering." Id. The second cause of action is predicated upon the death of the injured employee, and it invests the personal representative of the decedent "with a right to such damages as will compensate" the surviving spouse, children, parents, or dependent next of kin. Id. If the injured employee died, then the first cause of action died with the injured employee. Id. With the addition of § 59, Congress *Page 318 
allowed the first cause of action to survive should the employee die.
As is evident, the FELA governs the availability and distribution of proceeds to certain persons only if the employee dies before resolution of the action. The Act makes no provision for distribution of proceeds once a FELA action is resolved during the life of the injured employee. Because the Act is silent in this respect, state law governs the distribution of any proceeds in such a situation.
 Law of Intestate Succession
If a person dies intestate in Alabama, §§ 43-8-40 to -42 govern the distribution of that person's estate. Because the settlement agreement of August 2, 1996, was legally enforceable, the settlement amount to which Mr. Holmes was entitled effectively became a part of his estate upon his death. Because he died without a will, the settlement amount is to be distributed under Alabama's laws of intestate succession. Accordingly, the probate court's order of distribution is affirmed.
AFFIRMED.
HOOPER, C.J., and SHORES, HOUSTON, SEE, and LYONS, JJ., concur.
COOK, J., concurs in the result.