## HENRITZY v GENERAL ELECTRIC COMPANY

Docket No. 109782. Submitted October 16, 1989, at Detroit. Decided January 16, 1990.

Elaine C. Henritzy brought an action for damages in Macomb Circuit Court against General Electric Company and B & B Homes, Inc., alleging that the injuries she suffered when a range produced by General Electric tipped forward were the result of defendants' negligence and constituted a breach of warranty. After discovery, the parties were ordered to attend a settlement conference on September 1, 1987, at 9:00 A.M. When Henritzy had not arrived at court by 8:30 A.M. on that date, her attorney called her home and was informed by her daughter that Henritzy was ill, that the daughter was going to call the doctor and that Henritzy would not be able to meet with the attorney. The attorney attended the settlement conference with full authority to settle and did, in fact, enter into a settlement with General Electric at 10:59 A.M. in the amount of $39,000. When the attorney called Henritzy that afternoon, he learned that Henritzy had died. It was later disclosed that Henritzy had been pronounced dead at 9:15 A.M. After appointment the personal representative of Henritzy's estate ratified the settlement entered into by the attorney with General Electric on Henritzy's behalf. Defendant General Electric objected to entry of judgment on the settlement; however, following a hearing, the trial court, Robert J. Chrzanowski, J., entered judgment on the settlement. When defendant General Electric refused to pay the judgment, a motion to compel payment and a writ of garnishment were filed. General Electric moved to set aside the judgment and the writ of garnishment. Following a hearing, Judge Chrzanowski found that there had been no adequate showing of any fraud in securing the settlement, held that agency principles permitted the personal representative of the estate to ratify the settlement, and refused to set aside the judgment. General Electric appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Attorneys at Law §§ 156, 157, 171.

See the Index to Annotations under Attorney or Assistance of Attorney; Executors and Administrators; Ratification.

The trial court did not abuse its discretion by refusing to set aside the judgment. Under agency principles, the act of the attorney in unknowingly entering into the settlement on behalf of his client after the client had already died, when ratified by the personal representative of the estate, became binding on both parties.

Affirmed.

ATTORNEY AND CLIENT — AGENCY — SETTLEMENTS — DEATH OF PRINCIPAL — RATIFICATION.

A settlement of a personal injury action by an attorney on behalf of his client pursuant to an authority to settle granted by the client may be ratified and enforced against a defendant who agreed to settle by the personal representative of the estate of the injured plaintiff where at the moment the settlement was made the plaintiff, unbeknownst to either plaintiff's attorney or the defendant, had already died.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Lee R. Franklin*), for plaintiff.

*Plunkett & Cooney, P.C.* (by *Michael T. Lynch* and *Deanna E. Hazen*), for General Electric Company.

Before: McDONALD, P.J., and MICHAEL J. KELLY and MURPHY, JJ.

MURPHY, J. Defendant General Electric Company (hereinafter defendant) appeals as of right from an order of the trial court denying defendant's motion to set aside judgment and to dissolve garnishment. We affirm.

On October 16, 1982, plaintiff was cooking dinner at her home on an electric range manufactured by defendant when she accidently fell on the range's oven door. Her fall caused the range to tip forward and heated liquids in pots spilled on her back, arms, and legs. Plaintiff suffered first- and second-degree burns.

In 1984, plaintiff filed suit against defendant and

B & B Homes, Inc., alleging negligence and breach of warranty. The parties engaged in discovery and on July 17, 1987, an order compelling a mandatory settlement conference was entered. In pertinent part, it stated:

> All parties, including plaintiff and an agent of defendant, General Electric Company, with settlement authority, be present in the chamber of The Honorable Judge Robert Chrzanowski on *Tuesday, September 1, 1987,* at *9 A.M.*

Plaintiff's attorney, Jeffrey Cohen, had made arrangements to meet his client at court at 8:00 A.M. on September 1. When she had not arrived by approximately 8:30 A.M., he telephoned her. Plaintiff's daughter, Cheryl Kengerski, answered the phone and stated that her mother was ill, that she was going to call a doctor, and that her mother would not be able to meet Cohen. Cohen then attended the settlement conference and the parties reached an agreement in which defendant would pay plaintiff $39,000. Then, at 10:59 A.M., the parties placed the terms of their agreement on the record. Attorney Cohen stated:

> After extensive negotiations and patience and latitude from this court, we have reached a settlement in the amount of $39,000. I have authority from my client, who's not here this morning to accept that sum on her behalf.

Defense counsel agreed, stating that he was authorized to settle the case in that amount. Defendant also stated that it would handle the dismissal of the action by way of a stipulation to an order or have a separate release executed on the side. This was to be tendered to the court within twenty days. We also note that there is no dispute that

Cohen had authority from plaintiff to settle her claim against defendant.

Later that afternoon, Cohen returned to his office and called plaintiff to inform her of the settlement. He was then advised by a member of plaintiff's family that she had died. Defendant apparently became aware of plaintiff's death the following day after reading her obituary in The Detroit News.

On September 25, 1987, Cohen presented an order of judgment for entry by the court. On October 1, 1987, defendant filed objections to the proposed order of judgment. A hearing was held on October 1, 1987, and the court approved and entered the judgment for $39,000 on that date. On October 5, 1987, defense counsel wrote Cohen asking for copies of the letters of authority or a copy of the probate court order appointing the personal representative of plaintiff's estate "so that we can give our principals full instructions relative to the issuance of the loss payment draft." On November 19, 1987, Cohen wrote defense counsel asking for payment of the settlement plus interest to date. Cohen received no response. On December 9, 1987, Cohen moved to compel payment of the judgment; and on January 21, 1988, Cohen filed an affidavit and writ of garnishment against defendant.

Then, on February 1, 1988, defendant sought to set aside the October 1, 1987, judgment and dissolve the writ of garnishment. Defendant attached a copy of plaintiff's death certificate revealing that plaintiff died from a heart attack at 9:15 A.M. on September 1, 1987. Defendant argued that the judgment should be set aside since plaintiff's counsel fraudulently concealed the fact that plaintiff died just before the settlement was placed on the record. Plaintiff's attorney filed an affidavit which stated that at no time during his telephone conver-

sation of 8:30 A.M. on September 1, 1987, did Cheryl Kengerski indicate or suggest in any manner or fashion that plaintiff was deceased at that time. Moreover, it was not until he returned to his office at 2:00 P.M. that he was informed that plaintiff had died. In addition, he was not provided with a copy of the death certificate, stating the time of plaintiff's death, until he received a copy of defendant's motion dated February 8, 1988, to set aside the default judgment and writ of garnishment.

Cheryl Kengerski filed an affidavit stating that on September 1, 1987, at approximately 8:30 A.M. or shortly before, she received a telephone call from attorney Jeffrey Cohen inquiring as to the whereabouts of her mother. Cheryl's affidavit stated that, because her mother appeared unresponsive to her calls, she informed Mr. Cohen that she thought her mother was sick and that she would have to call a doctor. Moreover, at the time of this conversation with Mr. Cohen, she was not aware that her mother had died and she did not indicate in any way to Mr. Cohen that her mother had died. Following her conversation with Mr. Cohen, she summoned assistance and it was only after emergency personnel arrived and pronounced her mother dead that she became aware of this fact. She did not talk to Mr. Cohen again until approximately 2:00 P.M. that afternoon when he telephoned to advise her mother that a settlement had been reached. She then informed Mr. Cohen that her mother had died.

Cohen argued at the hearing that, according to agency law, when the principal dies and the agent acts without knowledge of the death of his principal, the actions of the agent can be ratified by the successor personal representative who steps into the shoes of the principal who has died. The personal representative of plaintiff's estate, Mar-

sha Miller, was present to testify at the hearing and she filed an affidavit which stated that after learning of the death of her sister on September 1, 1987, she discussed the settlement of the instant lawsuit with Cohen. Moreover, as personal representative of the estate, she authorized Mr. Cohen to proceed with the settlement or otherwise ratify the settlement.

After the hearing on this matter, the lower court issued a written opinion. The court first concluded that there had been an insufficient showing that there had been any fraud perpetrated on the court by plaintiff's attorney or any members of plaintiff's family. In addition, the court concluded that, based upon agency principles, the subsequent ratification of the settlement agreement by the personal representative of plaintiff's estate was effective. Therefore, the parties were bound by the terms of the settlement agreement even though plaintiff's death occurred before the time the agreement was placed on the record. The court's opinion in pertinent part stated:

> Defendant correctly asserts that an attorney's authority to act on behalf of a client terminates upon the death of the client. *Wright v Estate of Treichel,* 36 Mich App 33; 193 NW2d 394 (1971). The argument is made on Plaintiff's behalf, however, that the settlement agreement should be upheld based upon the appointment of Marsha Miller as personal representative of Plaintiff's estate and Miller's subsequent ratification of the settlement agreement. That argument is based on 2 Restatement Agency, 2d § 84(2), p 213, which identifies what acts can be ratified as follows:
> 
> "An act which, when done, the purported or intended principal could not have authorized, he cannot ratify, except an act affirmed by a legal representative whose appointment relates back to or before the time of such act."

The Court is of the opinion that, under principles of agency law, the subsequent ratification of the settlement agreement by Plaintiff's personal representative was effective. Thus, the parties should be bound by the terms of the settlement agreement, even though Plaintiff's death occurred prior to the time the agreement was placed on the record.

Defendant's sole issue raised on appeal is that the lower court abused its discretion in refusing to set aside the judgment. We disagree.

Defendant is seeking relief from the lower court's entry of judgment in plaintiff's favor. Such relief is governed by MCR 2.612. A trial court's decision on a motion to set aside a judgment should not be disturbed on appeal absent a clear abuse of discretion. *Huber v Frankenmuth Mutual Ins Co,* 160 Mich App 568, 576; 408 NW2d 505 (1987). Our Supreme Court in *Poet v Traverse City Osteopathic Hospital,* 433 Mich 228, 251; 445 NW2d 115 (1989), recently reaffirmed the abuse of discretion standard enunciated in *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959):

The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason, but rather of passion or bias.

We next note that it has been stated that the rule in Michigan is that the authority of an attorney is revoked when the attorney-client relation-

ship is terminated when the client dies. See *Wright v Estate of Treichel,* 36 Mich App 33, 36; 193 NW2d 394 (1971).

. Since plaintiff died shortly before the settlement agreement was placed on the record, defendant contends that plaintiff's attorney acted beyond his authority when he entered into the settlement agreement. Although that may be true, the issue presented is whether the attorney's alleged unauthorized act may be ratified. We hold that it may be.

The lower court relied on agency principles and the theory of ratification to uphold the settlement and we find no abuse of discretion in the lower court's doing so. Ratification has been defined as the confirmation of a previous act done by the party himself or by another and the affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him. Black's Law Dictionary (5th ed), p 1135.

1 Restatement Agency, 2d, § 84, p 213, in setting forth what acts can be ratified, provides:

(2) An act which, when done, the purported or intended principal could not have authorized, he cannot ratify, except an act affirmed by a legal representative whose appointment relates back to or before the time of such act.

Moreover, Comment e, p 217, provides:

e. *Ratification by executors and similar representatives.* An executor, administrator, assignee, trustee in bankruptcy, or other representative whose title, when appointed, relates back to an earlier time, can ratify acts which he could have

authorized had he been appointed at such an earlier time.

In addition, Illustration 11, p 217, provides:

11. B dies. His former agent, A, in ignorance of his death, executes his former authority by purchasing goods from T in B's name. Thereafter P is appointed administrator and empowered to continue B's business. P affirms. The purchase from T binds the estate.

In this case, plaintiff, the principal, died. Cohen, her agent in ignorance of her death, acted beyond the scope of his authority by finalizing a settlement agreement on her behalf. Thereafter, Marsha Miller, plaintiff's sister, was appointed administrator and she empowered Cohen to proceed with her sister's claim against defendant. Clearly, plaintiff's claim survived her death. See MCL 600.2921; MSA 27A.2921. Miller then affirmed the settlement and ratified the agreement entered into between Cohen and defendant. As such, Miller's ratification relates back to the time the act was done. In other words, the settlement is binding just as if Cohen had the authority to enter into the settlement on September 1, 1987, after 9:15 A.M.

This result is also consistent with a somewhat similar case decided by the Supreme Court of Utah. In *Blackhurst v Transamerica Ins Co*, 699 P2d 688 (Utah, 1985), Robert Blackhurst, the personal representative for the estates of his parents, brought an action to enforce a settlement agreement in which the defendant insurer had agreed to pay $150,000 to settle his mother's personal injury claim against its insured.

Mrs. Blackhurst, a relatively healthy elderly woman, was struck by a car driven by the defendant's insured on August 21, 1980. As a result of

the accident, Mrs. Blackhurst suffered brain injury and was rendered incompetent and unable to care for herself or her husband. The plaintiff began negotiations with Rex Hess, a Transamerica agent, regarding his mother's personal injury claim in October, 1980. In December, 1980, he retained an attorney, Keith Nelson, to represent him. The insurer at all times knew of Mrs. Blackhurst's condition.

Throughout February and March of 1981, the parties were unable to come to an agreement. On March 23, 1981, Nelson personally delivered a summons and complaint to Hess. It had not been filed with the court. That action claimed $500,000 in special damages for Mrs. Blackhurst, $1,000,000 in general damages, and $500,000 for Mr. Blackhurst. The next day, Hess and Nelson orally agreed on a settlement figure of $150,000. Nelson confirmed the agreement by letter, hand delivered that same day.

On or about March 25, 1981, Nelson prepared a petition for appointment of a conservator for Mrs. Blackhurst and a release in accordance with his agreement with the defendant and submitted them to the appropriate probate court. The presiding probate judge requested that Nelson return on Monday, March 30, when the probate clerk would return from vacation and could file the petition.

Mrs. Blackhurst died on Sunday, March 29, 1981. The plaintiff was appointed special administrator for his mother's estate on April 1. Later that same day, Nelson informed Hess that Mrs. Blackhurst had died. The defendant then stated that it did not intend to pay the amount agreed upon in the settlement documents. Mr. Blackhurst died shortly thereafter.

The lower court in a summary judgment held the agreement enforceable although Mrs. Black-

hurst died prior to the appointment of a general guardian and approval of the settlement by the court. The Utah Supreme Court affirmed, noting that Hess willingly entered into a settlement agreement with Nelson on March 24 that was confirmed by a letter hand delivered that same day. Moreover, the court noted that even if attorney Nelson's acts on Mrs. Blackhurst's behalf were unauthorized, as the defendant claimed, they were subsequently ratified by Robert Blackhurst after he was appointed special administrator of his mother's estate. Such ratification relates back to the time when the unauthorized act was done. The court held that the March 24 agreement between Nelson and Hess was enforceable.

The Utah court also addressed the defendant's claim that, assuming Nelson had authority to act on Mrs. Blackhurst's behalf, her death caused such authority to be revoked. The court concluded that in its view the agreement reached by the parties on March 24, five days before Mrs. Blackhurst's death, was a completed contract and as such is valid and enforceable. The court reasoned whether any "agency" terminated on the death of Mrs. Blackhurst is irrelevant since the contract was completed before her death.

We are satisfied that in the case at bar the lower court appropriately applied agency and ratification principles to uphold the settlement agreement entered into and placed on the record between the parties. We find no abuse of discretion by the trial court's upholding the settlement agreement. Therefore, the lower court's order denying defendant's motion to set aside judgment and to dissolve garnishment is affirmed.

Affirmed.

McDONALD, P.J., concurred.

MICHAEL J. KELLY, J., concurs but continues to reprove the "hyperbolic" abuse of discretion standard enunciated in *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). See Justice LEVIN's characterization in *People v Talley*, 410 Mich 378, 396-397; 301 NW2d 809 (1981).