KRESNAK v KRESNAK

Docket No. 130357. Submitted June 11, 1991, at Grand Rapids. Decided August 19, 1991, at 9:10 A.M.

William M. Kresnak filed a complaint in the Muskegon Circuit Court seeking a divorce from Helen M. Kresnak. The parties thereafter agreed to amend the complaint to one for separate maintenance. The agreement, which provided that the parties' assets and liabilities would be distributed in a certain manner, was read into the record following a hearing, and the parties expressed a willingness to enter into the agreement. Because Mr. Kresnak was known to be suffering from a terminal illness, the agreed-upon distribution of property was intended to be a final property settlement. The court, Ronald H. Pannucci, J., orally approved a judgment of separate maintenance and the settlement agreement. However, before a written judgment could be entered, Mr. Kresnak died. The personal representative of his estate then filed a motion to enforce the separate maintenance agreement. Mrs. Kresnak opposed the motion, arguing that the court lost jurisdiction to enter the judgment because of Mr. Kresnak's death. The court disagreed, and entered a written judgment of separate maintenance consistent with the settlement agreement. Mrs. Kresnak appealed.

The Court of Appeals held:

Mr. Kresnak's death did not divest the court of jurisdiction to enter a judgment implementing the property settlement agreement and the personal representative's ratification of the settlement agreement related back to the time the agreement was reached. The court did not err in entering the judgment for separate maintenance in accordance with the settlement placed on the record.

Affirmed.

1. HUSBAND AND WIFE — SEPARATE MAINTENANCE — ACTIONS — DEATH OF PARTY — JURISDICTION.

The death of a party to an action for separate maintenance does

REFERENCES

Am Jur 2d, Divorce and Separation §§ 176, 177, 674, 846, 849.

See the Index to Annotations under Abatement, Survival, and Revival of Actions; Death and Death Actions.

not divest the court of jurisdiction to enter a judgment of separate maintenance implementing a property settlement agreed upon by the parties that was orally approved and placed on the record by the court before the death; the continued enforceability of the agreement is determined by the parties' intent; that determination is governed by the general rules relating to contracts, with the cardinal rule being to ascertain the intention of the parties from the language used, the subject matter, the end in view, and the situation of the parties at the time.

2. HUSBAND AND WIFE — SEPARATE MAINTENANCE — ACTIONS —
   DEATH OF PARTY — PERSONAL REPRESENTATIVE'S RATIFICATION.
   A court may enter a judgment for separate maintenance implementing a property settlement agreed upon by the parties that was orally approved and placed on the record by the court before the death of one of the parties where the personal representative of the decedent's estate ratifies the terms of the agreement and desires its enforcement.

*Landman, Latimer, Clink & Robb* (by *Gary T. Britton* and *James M. Searer*), for the plaintiff.

*Potuznik, Carrozza, Wilson, Hermanson & Duffey, P.C.* (by *Harold M. Hermanson*), for the defendant.

Before: GRIBBS, P.J., and HOOD and GRIFFIN, JJ.

GRIFFIN, J. Defendant, Helen M. Kresnak, appeals as of right from a judgment of separate maintenance entered by the Muskegon Circuit Court. We affirm and hold that consistent with the parties' intent a judgment of separate maintenance may be entered after the death of a party.

I

The parties, William and Helen Kresnak, were married on December 6, 1974. On January 5, 1990, Mr. Kresnak filed a complaint for divorce in the Muskegon Circuit Court. The matter was scheduled for trial on March 16, 1990. That day, the parties reached a settlement agreement whereby

the complaint for divorce would be amended to one for separate maintenance.[1] The agreement further provided that the parties' assets and liabilities would be distributed in a certain manner. A hearing was held and the terms of the agreement were read into the record. Both parties acknowledged the terms of the agreement and expressed their willingness to enter into it. At the time the separate maintenance settlement was placed on the record, Mr. Kresnak was suffering from a terminal illness. Mr. Kresnak's impending death was well known and brought to the attention of the court. There is no dispute that the agreed-upon distribution of property was intended to be a final property settlement.

Following the hearing, the circuit court approved the settlement agreement as follows:

> The court, pursuant to the negotiation, will order an amendment, alleging separate maintenance, based upon the testimony and the agreement.
> The court is satisfied that there's been a breakdown in the marital relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.
> The court grants a judgment of separate maintenance, conforming with the agreement, and would ask that the documents be presented within 30 days from this date.

On April 10, 1990, before the entry of a written judgment, Mr. Kresnak died. Thereafter, on May 9, 1990, the personal representative of Mr. Kres-

---

[1] In Michigan, judgments for separate maintenance are statutorily authorized. MCL 552.7; MSA 25.87. Although a judgment for separate maintenance bears many similarities to a judgment of divorce, such a judgment does not terminate the marital relationship. See, generally, 1 Moore, Moore & Denison, Michigan Practice: Marriage & Divorce, ch 16, Separate Maintenance, § 281 *et seq.*

nak's estate filed a motion to enforce the separate maintenance agreement. At a May 21, 1990, hearing, counsel for Mrs. Kresnak opposed the motion, arguing that the circuit court had lost jurisdiction to enter the judgment because of Mr. Kresnak's death. Muskegon Circuit Court Judge Ronald H. Pannucci disagreed and ruled that the settlement agreement would be enforced. On May 25, 1990, a written judgment of separate maintenance was entered consistent with the terms of the property settlement agreement. Later, Judge Pannucci denied defendant's motion for rehearing:

> Defendant has filed a motion to reconsider and the court has reviewed all pleadings, motions, briefs, and transcripts. The court has further reviewed *Tiedman v Tiedman*, 400 Mich 571 [255 NW2d 632] (1977), and *Waple v Waple*, 179 Mich App 673 [446 NW2d 536] (1989).
>
> The settlement contemplated the impending death of plaintiff. The settlement was ratified and relied upon by all parties and attorneys. The settlement must be enforced.
>
> Motion to reconsider is denied.

Mrs. Kresnak now appeals.

II

On appeal, defendant renews her argument that once Mr. Kresnak died the circuit court lost jurisdiction to enter the judgment of separate maintenance. We disagree.

In support of her argument, defendant relies almost exclusively on *Tiedman v Tiedman*, 400 Mich 571; 255 NW2d 632 (1977). Unlike the present case, *Tiedman* involved the entry of a divorce judgment. In *Tiedman*, a hearing took place during which testimony was taken establishing the

statutory grounds for the divorce and a proposed property settlement was placed on the record. The trial court then indicated that the statutory grounds for divorce had been satisfied, stating that "upon presentation I will sign the judgment of divorce."

Before the entry of the divorce judgment, Mr. Tiedman died. Mrs. Tiedman thereafter moved to dismiss the complaint for divorce on the ground that because she was a widow the circuit court had lost jurisdiction to enter a judgment of divorce. The trial judge denied the motion and entered a judgment of divorce nunc pro tunc despite the intervening death of Mr. Tiedman. The court reasoned that its oral pronouncement at the previous hearing constituted the rendition of a judgment and that "further acts were ministerial in nature." This Court affirmed. *Tiedman v Tiedman,* unpublished opinion per curiam of the Court of Appeals, decided January 30, 1976 (Docket No. 22813).

The Supreme Court, however, disagreed and reversed. In a unanimous opinion, the Court held:

> We hold that where it is contemplated that a judge's oral statement, that a divorce is or will be granted, will be followed by the signing of a judgment, the divorce and property settlement do not become effective until the judgment is signed and cannot be made effective nunc pro tunc after one of the parties dies. [*Tiedman, supra* at 573.]

In explaining its result, the Supreme Court reasoned as follows:

> After a judge's oral pronouncement that he will sign a judgment of divorce a dispute might arise regarding the meaning of the words used by the lawyers in stating the terms of a property settlement, *or the parties might reconcile or, for other*

*reasons, by mutual agreement abandon the action for divorce and resume the marriage relationship.* They would not be divorced simply because the judge had said a divorce is or will be granted or that he would sign a judgment of divorce.

The rule is well established that courts speak through their judgments and decrees, not their oral statements or written opinions. Generally, a judgment or order is reduced to written form, as was contemplated in this case; *until reduced to writing and signed, the judgment did not become effective and the parties remained married.*

*A court is without jurisdiction to render a judgment of divorce after the death of one of the parties. "There must be living parties, or there can be no relationship to be divorced." Wilson v Wilson,* 73 Mich 620, 621; 41 NW 817 (1889).

"A judgment is the final consideration and determination of a court of competent jurisdiction upon the matters submitted to it" (*Whitwell & Hoover v Emory,* 3 Mich 84, 88 [1854]); until a judgment is signed the judge may change his mind and sign a different judgment. The judge's statement in this case that he would not have reconsidered the matter does not negate his power to have done so.

\* \* \*

In the instant case, it was beyond the court's power after Donald Tiedman's death to enter a judgment of divorce or to order a property settlement or to have ordered payment of alimony. This is also the rule in other jurisdictions. [*Tiedman, supra* at 575-577. Emphasis added.]

At first blush, *Tiedman* would appear to control the instant case. Upon review, however, we deem it appropriate to limit *Tiedman* to its facts. As we have noted previously, the *Tiedman* Court "seemed to have been concerned with the possibility of granting a final judgment of divorce when one of the parties is already dead." *Vioglavich v Viogla-*

*vich,* 113 Mich App 376, 383; 317 NW2d 633 (1982). Such a result, as observed in *Tiedman,* would be anomalous because in the absence of two living parties, there is simply no relationship to be divorced. *Tiedman, supra* at 576.

The present case, however, does not involve a judgment of divorce. Rather, it concerns a judgment for separate maintenance in which the marital relationship is not severed. Furthermore, most jurisdictions when dealing with this issue recognize a distinction between a judgment of divorce and a judgment for separate maintenance.[2] As noted in anno: *Separation agreements: enforceability of provision affecting property rights upon death of one party prior to final judgment of divorce,* 67 ALR4th 237, 240-241, other states have held that the death of a party does not divest the court of jurisdiction to enter a judgment implementing a property settlement agreement:

> Since a cause of action for divorce is purely personal, it has generally been recognized that, upon the death of either spouse, such a cause of action terminates, or, if commenced, the action abates. Despite termination or abatement of any pending action for divorce upon the death of a spouse, courts will still entertain an action by the surviving spouse or the deceased's estate to adjudicate property rights affected by the marital status of the parties.
>
> The property rights of the parties are further complicated when they have made an agreement as to their respective rights but one party dies prior to the time that their divorce is final. As a general rule, these agreements have been recognized to survive the death of one of the parties

[2] In the context of res judicata, this Court has recognized the "substantial difference between a divorce from bed and board [separate maintenance] and a divorce from the bonds of matrimony." *Engemann v Engemann,* 53 Mich App 588, 594; 219 NW2d 777 (1974).

after a divorce unless the agreement itself or the surrounding circumstances show that it was not intended to survive. . . .

In keeping with these principles, where the death of a party occurs prior to their divorce, courts have treated the continued enforceability of the agreement as a question of the parties' intent. Thus, where a separation agreement has been incorporated into an interlocutory decree of divorce, courts have held that nullification of the decree by the death of one of the spouses does not render the separation agreement unenforceable simply because of its incorporation. . . .

\* \* \*

The construction, operation, and effect given to separation agreements are governed by the general rules relating to contracts, with the cardinal rule being to ascertain the intention of the parties from the language used, the subject matter, the end in view, and the situation of the parties at the time.

We find the above observations to be well taken and hereby adopt them as our own.

Further, we find the property settlement before us akin to the settlement of a civil action that can be ratified upon the death of one of the parties. *Henritzy v General Electric Co,* 182 Mich App 1; 451 NW2d 558 (1990). In *Henritzy,* the plaintiff brought suit after sustaining burn injuries while cooking with the defendant's electric range. At a mandatory settlement conference, the plaintiff's attorney settled the case for $39,000, and the settlement was placed on the record at 10:59 A.M. Unbeknownst to the attorney, however, the plaintiff had died that morning at 9:15 A.M., before the hearing.

The plaintiff's counsel thereafter obtained an entry of judgment and instituted garnishment proceedings against the defendant. In response, the

defendant sought to set aside the judgment and the writ of garnishment on the basis of fraud. A hearing was held, at which the trial court found that the attorney had not fraudulently concealed his client's death. More importantly, however, the court enforced the terms of the settlement agreement on the basis that the personal representative of the plaintiff's estate had ratified the agreement. This Court affirmed, reasoning as follows:

> In this case, plaintiff, the principal, died. Cohen, her agent in ignorance of her death, acted beyond the scope of his authority by finalizing a settlement agreement on her behalf. Thereafter, Marsha Miller, plaintiff's sister, was appointed administrator and she empowered Cohen to proceed with her sister's claim against defendant. Clearly, plaintiff's claim survived her death. See MCL 600.2921; MSA 27A.2921. Miller then affirmed the settlement and ratified the agreement entered into between Cohen and defendant. As such, Miller's ratification relates back to the time the act was done. In other words, the settlement is binding just as if Cohen had the authority to enter into the settlement on September 1, 1987, after 9:15 A.M. [*Henritzy, supra* at 9.]

We find *Henritzy* to be persuasive and hereby apply it to the present case. The personal representative of Mr. Kresnak's estate testified that it was her desire to enforce the terms of the settlement agreement. Such ratification, under *Henritzy,* "relates back to the time the act was done." *Id.*

For these reasons, we conclude that the trial court did not err in entering the judgment for separate maintenance in accordance with the settlement placed on the record on March 16, 1990.

Affirmed.