*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KARL JOHNSON,

       Plaintiff-Appellee,

v

DORIS JOHNSON,

       Defendant-Appellant.

FOR PUBLICATION
September 12, 2025
1:49 PM

No. 370181
Ontonagon Circuit Court
LC No. 2022-000072-DO

Before: SWARTZLE, P.J., and GARRETT and YATES, JJ.

GARRETT, J.

In 2014, the parties agreed to a consent judgment of separate maintenance (consent judgment) that divided the parties' real and personal property and required plaintiff, Karl Johnson, to pay spousal support to defendant, Doris Johnson. In 2022, Karl filed a complaint for divorce against Doris, and the trial court entered a judgment of divorce (JOD) that modified provisions of the consent judgment, including the property settlement and spousal support. Doris appeals by right the JOD, arguing that the trial court erred by failing to enforce the property settlement, by modifying the nonmodifiable spousal support, and by failing to impose sanctions against Karl for breaching the consent judgment. We conclude that the trial court erred by failing to enforce the consent judgment, with the exception of the provisions related to the parties' real property. Accordingly, we reverse the JOD in part and remand for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEEDINGS

The parties were married on October 15, 1982. Karl is 71 years old, and Doris is 69 years old. They have two sons, who are both adults. In 2013, Karl filed a complaint for divorce in the Houghton Circuit Court. Doris filed a counterclaim for divorce, but Karl subsequently withdrew his complaint, and Doris amended her counterclaim to request a judgment of separate maintenance. Ultimately, the parties agreed to a consent judgment. Regarding the marital home located in Toivola, Michigan, the consent judgment stated that the property "shall hereafter be held by the parties as Tenants-in-Common, and shall be listed with a realtor and sold as soon as practicable." The home is a doublewide trailer with a basement located on property fronting Lake Gerald. The consent judgment further provided:

From the sale proceeds of the home the costs of sale shall be paid and 50% of the remaining proceeds assigned to each party. At closing, proceeds herein awarded to Karl Johnson shall be paid over to Doris Johnson to the extent necessary to satisfy any amounts remaining to be paid to her under this Judgment, which amount is anticipated to be $80,095.69 (see paragraph 4 below).

Karl Johnson shall be allowed to remain in the marital home until June 1, 2014. He shall keep the home and property fully insured for replacement value until it is sold. Karl Johnson is required to pay the expenses related to the marital home while he has been living there and to June 1, 2014, including all utilities, taxes pro-rated to June 1, 2014, insurance, and day-to-day repairs and maintenance, and shall hold Doris Johnson harmless from any responsibility therefore.

Karl Johnson shall further keep the home, outbuildings, and lot clean and presentable for showing to potential buyers, and shall leave it clean and completely empty of all items of personal property of any kind by June 1, 2014.

The parties may agree that Karl Johnson may remain in the marital home for up to one additional month, provided that he has shown that he is finding places for everything and is in the process of moving and that he keeps the house in good condition for showings. If the parties so agree and Mr. Johnson remains in the home after June 1, 2014, he shall pay to Doris Johnson $750.00. In addition, if Doris Johnson needs to resort to court action to enforce this Judgment, Karl Johnson shall be obligated to pay her attorney fees and court costs reasonably incurred in said actions.

The parties also owned a 75% interest in 133 acres of property, including a cottage, located in Toivola (the "Naasko property"). The consent judgment provided that the Naasko property "shall be held as Tenants-in-Common until the sale of the house property, and until all sums due to Doris Johnson have been paid, at which time Doris Johnson shall sign a quitclaim deed transferring her ownership interest in said property to Karl Johnson." Because the property distribution was inequitable, the consent judgment required Karl to pay Doris an equalization payment of $80,095.69 on or before the date of the closing on the sale of the marital home.

Regarding Doris's retirement plan, the consent judgment awarded her 100% of her retirement account from the Ohio education system and 100% of her retirement account from the Michigan education system. The consent judgment required Karl to pay Doris monthly spousal support in the amount of $1,051.20. Regarding Karl's retirement plan, spousal support, and Doris's health insurance, the consent judgment stated:

8. Retirement

\* \* \*

B. It is agreed that Karl Johnson's Ford-UAW Retirement Plan benefits will be divided with 38% ($1051.20) of the monthly benefit awarded to Doris Johnson for the duration of Karl Johnson's lifetime and 62% awarded to Karl Johnson, pursuant to a QDRO.

C. Karl Johnson is currently retired and has elected the survivor option under the Ford-UAW Retirement Plan. Doris Johnson is currently and shall remain designated as the surviving spouse for purposes of all of the plan's post-retirement survivor annuity benefit and she shall be entitled to any and all post-retirement surviving spouse benefits under the Plan.

D. Karl Johnson shall provide any and all cooperation and assistance necessary to maintain Doris Johnson's current coverage under the Ford-UAW health insurance plan.

* * *

11. Alimony. The parties understand that Karl Johnson's Ford Pension will reduce his monthly benefit payment on or about March 1, 2016. The parties will attempt to have the entirety of Doris Johnson's portion paid to her directly after this date, but if the Plan will not allow this, Karl Johnson will pay to Doris Johnson any portion of her $1,051.20 which she no longer receives directly from the Plan. . . .

In the event that Doris Johnson is no longer covered under the Ford-UAW health plan, she shall have the right to seek an increase in her alimony. In all other respects, this alimony provision shall remain in force without change during Karl Johnson's lifetime. Each party acknowledges that he or she is foregoing his or her statutory right to petition the Court for modification of alimony, if such statutory right applies to this case, and understand and agree that this alimony provision is final, binding and non-modifiable, except as indicated above.

Finally, the consent judgment stated that any rights either party had as a named beneficiary in a life insurance policy on the life of the other party "are continued without change."

Thereafter, the parties were unable to agree regarding the sale of the marital home, which still remained unsold in 2022. Karl also failed to pay Doris the equalization payment of $80,095.69. On July 8, 2022, Doris moved to enforce the consent judgment in the Houghton Circuit Court. After Karl responded to the motion, he filed this action for divorce in the Ontonagon Circuit Court. The parties stipulated to transfer the Houghton County action to Ontonagon County and consolidate the two proceedings. On June 2023, the trial court entered a stipulated order regarding the sale of the marital home. The order required Doris to obtain estimates regarding whether to clean up the property or sell it as is, required the parties to obtain realtor opinions regarding whether to repair the home or tear it down and to agree on one of the options, and required Karl to sell the pool table and remove his personal property from the premises within 45 days.

In September 2023, Doris filed another motion to enforce the consent judgment.[1] She argued that Karl failed to comply with its terms in several respects. She maintained that, since

---

[1] Neither the Houghton Circuit Court nor the trial court decided Doris's first motion to enforce the consent judgment.

-3-

entry of the consent judgment, two realtors had asked that the house be cleaned, but Karl refused to do so and refused to sign a listing agreement, engage in sales negotiations, or show the home to potential buyers. Doris also maintained that Karl failed to upkeep the property or remove his belongings from the home and had stored additional personal property on the premises, including a junk car that sat in the driveway for two years. Further, Doris asserted that she paid many of the expenses to maintain the home, including insurance and property taxes, and that Karl removed her as the beneficiary of his life insurance policy, contrary to the terms of the consent judgment. She requested that the trial court order Karl to quitclaim his interest in the marital home to her and order that the home be valued at $220,000 and sold to the parties' son, William Johnson. She further sought payment of several amounts, including the $80,095.69 equalization payment and $750 per month for Karl's use of the marital home since June 1, 2014. Finally, she sought an order requiring Karl to pay her attorney fees and costs associated with her motion. Karl did not respond to the motion.

The trial court held a final divorce hearing at which both parties testified. According to Karl, his monthly income included $310 from his UAW pension and $1,750 in Social Security, for a total of approximately of $2,060. His monthly expenses totaled approximately $2,100 and included a $630 truck payment, a $300 car payment, $99 for auto insurance, $200 for gas, $75 for electricity, $70 for water and sewer, $25 for his phone, $117 for cable television, $500 for groceries, and $50 for household goods. The total amount of his UAW pension was $1,393 per month, but he paid Doris $1,056 per month as spousal support. His standard of living was "substandard." He could not afford to visit his grandchildren or get haircuts and was skipping meals.

Karl inherited approximately $156,000 from his family during the marriage as well as a 75% interest in the Naasko property and the land on which the marital home is located. The $156,000 was spent by the time the parties agreed to the consent judgment, and Doris had always managed the parties' finances. Karl admitted that the Naasko property was worth $450,000 to $500,000 and that he could live comfortably if he sold his interest in the property. When asked whether he could sell one of his vehicles to assist him financially, Karl responded that he could not because William was driving his truck. He denied that he would ever be able to work again because of his poor health.

Karl admitted that he agreed to list the marital home with Re/Max for $260,000 although he had not "signed anything officially" because William moved into the home. William was going through a divorce and had lost his job. Doris signed the listing agreement, and Karl believed that $260,000 was a fair price. The home was not sold previously because of the COVID-19 pandemic and Doris's failure to cooperate with the sale. Karl also claimed that Doris and the "real estate lady" accused him of destroying the property by removing trees from the septic field, which needed to be done. In addition, Doris canceled the listing agreement with Domitrovich Realty in 2020, and an "as is" sale to Don and Donna Jarman for $200,000 fell through because of issues involving the title and designation of the home as a manufactured unit. After the sale to the Jarmans fell through, some of the home's decks and roof trusses were damaged. Karl received a check in the amount of $41,489 from Fremont Insurance as a result of the damage. The check was dated July 25, 2022, and both he and Doris were listed as payees. Karl did not cash the check and maintained that it could be reissued.

Karl wanted a divorce rather than continuing under the consent judgment because it had been more than nine years and the marital home was still unsold due to Doris "dragging her feet." He also maintained that Doris wanted his life insurance proceeds and that he was unable to "do anything," including "go out and have a good time." He stated that he fired his attorney one week before he signed the consent judgment. He admitted that he agreed to the consent judgment, but maintained that it was the worst mistake he had made in his life. He claimed to have paid all the insurance for the marital home and most of the property taxes for nine years, although he acknowledged that Doris had paid some of the taxes because the bill at times first went to her. The property taxes were not up to date. He had moved 90% of his personal property out of the marital home, but some items remained in the garage. Karl changed the beneficiary of his life insurance policy to William because Doris was "evil" and would not use the proceeds to take care of his financial affairs or bury him. Further, he wanted to discontinue spousal support payments so that he could afford to spend time with his grandchildren and buy them gifts.

According to Doris, her monthly income consisted of $1,051 in spousal support, $117 from a Michigan education system pension, $168 from an Ohio education system pension, and $751 in Social Security, which totaled $2,087. She lived in Prudenville, Michigan, in a home valued at approximately $260,000 or $280,000. She paid a $60,000 down payment on the home using funds received as a result of the consent judgment. Her monthly mortgage payment was $543, and her current mortgage balance was $72,000. She drove a 2023 Ford Edge that she purchased for $18,000. Doris admitted that she was not employed and that she was in better health than Karl.

Doris maintained that she attempted to sell the marital home immediately after entry of the consent judgment. Realtor Jenny Deephouse was present in court on the day that the parties signed the consent judgment, but Karl refused to sign the listing agreement. Deephouse nevertheless listed the home for $299,000, but Karl refused appointments and locked Deephouse out of the home. On one occasion, Karl went to Deephouse's office and "screamed and yelled in her face so bad she had to call 911." About one year later, Karl suggested listing the home with realtor Harold Rapson, who sent Doris a listing agreement with a sale price of $265,000. Doris declined to list the home at that time because it was winter. Later in 2016, Doris signed the listing agreement with Rapson, but Karl did not. The home was nevertheless listed for sale, but was never shown. Both Deephouse and Rapson requested that the home be cleaned out and the personal property removed, but Karl never did so. Doris maintained that she and William cleaned out the home in the summer of 2023 and that it was a two-month project.

Regarding the condition of the home, Doris maintained that it had several problems, including mold, a dripping ceiling, railings torn off the decks, fallen decks, a stained shower and toilets, a rusted kitchen sink, a damaged front picture window, and broken screens. Two contractors estimated the damage to the home at $150,000 to $180,000. Doris estimated the value of her own work on the marital home at $10,000 and maintained that she spent $6,000 to clean up the property. She acknowledged that the home had previously been listed with Re/Max for $260,000 and that she refused to sign a listing agreement with Domitrovich Realty because she disagreed with several aspects of the proposal, including the price. At the time of her testimony, Doris believed that $260,000 was too high a price because of the disrepair of the home. She estimated the current value of the home at $200,000, but testified that William resided in the home and intended to stay there.

When asked what she was requesting the trial court to do, she responded, "enforce the separate maintenance" However, she also testified that she wanted the court to award her the marital home in lieu of Karl paying her the equalization payment of $80,095.69 and that she would then transfer her ownership interest in the Naasko property to Karl. She further testified that she wanted the uncashed check from Fremont Insurance to be used to make repairs to the home. She maintained that she paid approximately $17,000 in property taxes and insurance on the home over the years and that the taxes were currently delinquent in the amount of $3,451.

Further, Doris asserted that because Karl failed to remove all of his personal property from the home, he was required to pay her $750 per month for every month after June 1, 2014, as stated in the consent judgment. That amount totaled approximately $81,000. Doris also requested an increase in spousal support as contemplated in the consent judgment in the event that she had to pay for health insurance. She testified that she was covered under Karl's UAW health insurance, which had no annual premium, and that a comparable health insurance plan after they divorced would cost her $284 per month plus a yearly deductible in the amount of $3,425. Finally, she requested that she be reinstated as Karl's life-insurance beneficiary.

The trial court entered a JOD that modified, in some respects, the consent judgment. The court relied on *Engemann v Engemann*, 53 Mich App 588; 219 NW2d 777 (1974), in support of its determination that it had authority to revisit the substantive issues resolved in the consent judgment, such as the property distribution and spousal support. Regarding spousal support, the court discussed the pertinent provisions of the consent judgment, the parties' requests, the applicable legal principles, and the parties' respective financial circumstances. The court further stated that the parties' waiver of their rights to request a modification of spousal support, set forth in the consent judgment, applied to the separate-maintenance action only and not to the divorce proceeding. Noting that the consent judgment was informative, but not binding, and that the purpose of spousal support was to balance the incomes and needs of the parties, the court ruled as follows:

> As the parties testified, Plaintiff's Ford-UAW pension monthly amount is $1393.32, $1051.20 of which is automatically transferred from Plaintiff's account to Defendant, for a $5 fee. Plaintiff receives $337.12 in pension income plus his social security benefit of $1750 for total monthly income of $2087.12. Defendant testified that she receives $1051.20 pursuant to the separate maintenance agreement, $117 from a Michigan pension (that includes cost of living increases), $168 from an Ohio pension (that also includes cost of living increases) and $759 in social security, for a current monthly income of $2095.20. At first glance these incomes appear comparable (a difference of $8.08), but the cost of living increases that Defendant can expect from her pensions gives her a bit of an edge, although the pension payments are fairly small. Considering this with Defendant's employable status (as opposed to Plaintiff's unemployable state), this court is left to conclude that payment of the bulk of Plaintiff's pension to Defendant tends to leave Plaintiff in an impoverished state. Accordingly this court awards to Defendant the entirety of her two pensions, her social security benefits and a modified award of Plaintiff's pension of $900. In light of Plaintiff's testimony regarding his current monthly bills, he is presently minimally underwater each

month, with only basic needs addressed. There is no money left over for any source of enjoyment, including visiting his grandchildren in Washington State.

Defendant's request for an increase in spousal support to compensate for her necessity to pay for health care coverage is denied for these same reasons.

Next, the trial court addressed the parties' personal property. The court stated that the division of personal property in the consent judgment, "resulted in an agreed equalizing payment to Defendant of $80,095.69, which Plaintiff acknowledged and agreed to as fair in his divorce testimony." The court adopted and reimplemented the equalization payment of $80,095.69 to Doris.

Turning to the parties' real property, the court rejected Doris's argument that she was entitled to $750 per month for the 108 months that Karl failed to removed his personal property from the marital home. The court stated that the consent judgment, although not binding on the court, did not provide for such payments. The court also recognized that each party accused the other party of interfering with attempts to sell the marital home and that, while the home was initially listed for sale at $299,000 in 2014, the most recent indication of the home's value was a $200,000 cash offer in 2022 "or thereabouts," but the sale fell through. In addition, the court recognized that Doris no longer wished to sell the home because the parties' adult son was living there. The court ruled as follows:

> The former marital home is valued at $200,000, the most recent value of an arms-length offer and acceptance for sale. Each party's interest in the property is therefore $100,000. This property is awarded to Defendant. Plaintiff's share of real estate equity is first applied to the equalizing payment of $80,095.69 awarded to Defendant. This reduces Plaintiff's interest in the former marital property to $19,904.31. Plaintiff shall immediately execute a quitclaim deed and deliver it to Defendant transferring his ownership interest in 33471 Lake Gerald Road, Toivola, Michigan. Plaintiff has no further interest in this property.

> The parties also have an uncashed insurance proceeds check in the amount of $41,489.95 from Fremont Insurance for damages to the former marital home, mentioned above. This check is divided equally between the parties: $20,744.98 to Defendant and $20,744.97 to Plaintiff. Applying Defendant's share to the outstanding equity due Plaintiff in the former marital home of $19,904.31, Plaintiff is awarded the insurance payout proceeds subject to a payment to Defendant of $840.67, which he is ordered to pay immediately, with the quitclaim deed referenced above.

> Defendant shall immediately execute a quitclaim deed and deliver it to Plaintiff transferring her ownership interest in the 75% interest of the parcel located at 33536 Lake Gerald Road, Toivola, Michigan [i.e., the Naasko property], since her lien on that premises has now been satisfied. Defendant has no further interest in this property.

The court denied Doris's request for payment for her work on the property and reimbursement for household expenses, stating "Neither party is awarded any payment from the other for caring for their commonly owned property." The court directed Karl to remove all of his remaining items from the property within 30 days and authorized Doris to dispose of items thereafter "as she chooses."

Further, the trial court ordered that neither party shall be entitled to life insurance proceeds on the life of the other party, stating "that beneficiary designation is destroyed by this order of divorce." Accordingly, the court upheld Karl's change of the beneficiary designation of his life insurance policy to William. Finally, the court summarily concluded, "Each party is responsible to pay his or her own attorneys' fees."

Doris moved for reconsideration, arguing that the trial court erred by failing to abide by the terms set forth in the consent judgment. The trial court denied the motion as well as Doris's motion to stay proceedings pending this appeal. The court also denied both parties' requests for attorney fees. This appeal followed.

## II. ANALYSIS

## A. STANDARDS OF REVIEW

Whether the trial court was bound by the consent judgment is a question of law, which we review de novo. *Shinkle v Shinkle*, 255 Mich App 221, 224; 663 NW2d 481 (2003). We also review de novo as a question of law the interpretation of a consent judgment. *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). "This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). Clear error exists if we are convinced that that a mistake was made after reviewing the entire record. *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012).

## B. LEGAL PRINCIPLES

Under MCL 552.7(1), "[a]n action for separate maintenance may be filed in the circuit court in the same manner and on the same grounds as an action for divorce." "Although a judgment for separate maintenance bears many similarities to a judgment of divorce, such a judgment does not terminate the marital relationship." *Kresnak v Kresnak*, 190 Mich App 643, 645 n 1; 476 NW2d 650 (1991). Nevertheless, both a judgment of divorce and a judgment of separate maintenance must address the same core issues characteristic of a domestic relationship. In this regard, MCL 552.101(3) provides:

> Each judgment of divorce or judgment of separate maintenance shall determine all rights, including any contingent rights, of the husband and wife in and to all of the following:
>
> (a) Any vested pension, annuity, or retirement benefits.
>
> (b) Any accumulated contributions in any pension, annuity, or retirement system.

(c) In accordance with section 18 of 1846 RS 84, MCL 552.18, any unvested pension, annuity, or retirement benefits.

In addition, MCR 3.211(B) states as follows:

A judgment of divorce, separate maintenance, or annulment must include

(1) the insurance provisions required by MCL 552.101;

(2) a determination of the rights of the parties in pension, annuity, and retirement benefits, as required by MCL 552.101(3);

(3) a determination of the property rights of the parties; and

(4) a provision reserving or denying spousal support, if spousal support is not granted; a judgment silent with regard to spousal support reserves it.

With respect to divorce actions, this Court has long recognized that the parties may enter into an agreement regarding their rights and obligations and that such an agreement, absent certain limited exceptions, is final and binding. For example, in *Vittiglio v Vittiglio*, 297 Mich App 391, 400; 824 NW2d 591 (2012), this Court stated, "It is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged." (Quotation marks and citation omitted). In *Andrusz v Andrusz*, 320 Mich App 445, 453; 904 NW2d 636 (2017), we recognized that "a consent judgment [of divorce] can only be modified with the consent of the parties, at least in the absence of fraud, mistake, illegality, or unconscionability." Further, this Court recognized that property settlements that the parties reached through negotiation should be upheld, and a party cannot later disavow a settlement agreement because of a change of heart. *Vittiglio*, 297 Mich App at 399 (quotation marks and citation omitted).

Integral to this reasoning is the notion that a consent judgment of divorce is a contract. See *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019) ("A divorce judgment entered upon the settlement of the parties represents a contract . . . .") (Quotation marks and citation omitted); *Andrusz*, 320 Mich App at 452 ("Consent judgments of divorce are contracts and treated as such."). We interpret a consent judgment of divorce in the same manner as other contacts—in accordance with its plain language. *Brendel v Morris*, 345 Mich App 138, 147; 4 NW3d 776 (2023). If the language is unambiguous, we apply the language as written unless the contract is contrary to law or violates public policy. *Stoudemire v Thomas*, 344 Mich App 34, 45; 999 NW2d 43 (2022).

In this case, the trial court determined, in accordance with *Engemann*, that it was not bound by the consent judgment. In *Engemann*, 53 Mich App at 591, this Court addressed whether the trial court in a divorce action could alter provisions to which the parties agreed in a previous

judgment of separate maintenance[2] or whether the doctrine of res judicata precluded the court from revisiting those issues. Because the question was an issue of first impression, this Court relied on caselaw from other jurisdictions. *Id*. at 592-594. After discussing the caselaw, we determined that "[t]here is such a substantial difference between a divorce from bed and board and a divorce from the bonds of matrimony that the principles of res judicata do not apply." *Id*. at 594. Further, we opined that the trial court in a divorce action is statutorily obligated to resolve issues involving spousal support and property. Accordingly, we held that the trial court did not err by modifying the spousal support provisions in the prior judgment of separate maintenance. *Id*.

We recognize that this Court decided *Engemann* in 1974, and, as such, it does not constitute binding precedent. Under MCR 7.215(J)(1), we must follow the rule of law established by a published decision of this Court issued on or after November 1, 1990, unless our Supreme Court or a special panel of this Court has reversed or modified the rule of law. See also *Andrusz*, 320 Mich App at 456-457. We also recognize that the *Engemann* Court's conclusion contravenes more recent binding precedent holding that a consent judgment constitutes a contract that must be enforced as written. We therefore overrule *Engemann*'s determination that the trial court in a divorce action may modify a previous settlement to which the parties voluntarily agreed to resolve an action for separate maintenance. The *Engemann* Court based its decision in part on the statutory requirement that a court in a divorce action address issues involving spousal support and property. However, so too is a court in an action for separate maintenance required to address such issues. See MCL 552.101(3); MCR 3.211(B). We see no reason to treat a consent judgment entered for the purpose of resolving an action for separate maintenance different from a consent judgment that resolves a divorce action. We therefore hold that the trial court erred by determining that it was not bound by the consent judgment.

## C. APPLICATION

Doris argues that the trial court erred by failing to adopt "*all* the terms" of the consent judgment. Her argument is flawed to the extent that she agreed to some modifications of the terms set forth in the consent judgment. In particular, Doris requested that the trial court award her the marital home in exchange for her agreement to forgo the $80,095.69 equalization payment and to release her interest in the Naasko property. Karl was not opposed to awarding Doris the marital home, but requested, as an offset, that the court award him the Fremont Insurance proceeds and require Doris to transfer to him her interest in the Naasko property, presumably without him having to pay her the equalization payment. The court granted Doris the marital home, ordered Karl to transfer his ownership interest in the marital home to Doris, and ordered Doris to transfer her interest in the Naasko property to Karl. Although Doris agreed to forgo the $80,095.69 equalization payment, the court did not disregard the payment and subtracted it from Karl's one-half share of the estimated value of the home. In addition, the court evenly divided the insurance proceeds between the parties instead of awarding all of the proceeds to Karl as he requested.

We hold that Doris cannot now claim error when she specifically agreed to the property distribution that the trial court ordered. "A party may not take a position in the trial court and

---

[2] The *Engemann* Court referred to the previous judgment alternately as a judgment of divorce from bed and board and a judgment of separate maintenance. See *Engemann*, 53 Mich App at 589, 594.

subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008) (quotation marks and citation omitted). Doing so constitutes "harboring error as an appellate parachute." *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002). "A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute." *Id*. (quotation marks and citation omitted). Further, although Doris was willing to forgo the equalization payment, because the trial court subtracted the payment from Karl's share of the marital home's value and equally divided the insurance proceeds, Doris is in a better position than she would have been if the court had divided the property as she requested at the divorce hearing.

In addition, as a practical matter, we are cognizant of the difficulty of enforcing the marital home provisions in the consent judgment 11 years after its entry. The consent judgment contemplated that Karl would reside in the home until June 1, 2014, or "for up to one additional month" if he paid Doris $750 for the additional month. The consent judgment also required Karl to pay the household expenses to June 1, 2014, including "taxes pro-rated to June 1, 2014." It is unknown when Karl moved out of the home, but he did not live there at the time of the divorce hearing. In the meantime, the property fell into disrepair, and Doris maintains that she paid some of the expenses for the home, including insurance and taxes. Because the consent judgment did not contemplate the home remaining unsold for so long, or which party would be responsible for the household expenses if it did, enforcing the marital-home provisions in the consent judgment would be impracticable, if not impossible.

In all other respects, the trial court erred by failing to enforce the consent judgment. Regarding spousal support, the consent judgment required Karl to pay Doris 38% ($1,051.20) of his Ford-UAW monthly retirement benefit "for the duration of Karl Johnson's lifetime." The consent judgment further provided that if Doris is no longer covered under the Ford-UAW health plan, "she shall have the right to seek an increase" in spousal support and that, "[i]n all other respects, this alimony provision shall remain in force without change during Karl Johnson's lifetime." The consent judgment specifically provided that the spousal support provision was "final, binding, and non-modifiable" and that the parties agreed to forgo their statutory rights to seek a modification of spousal support with the limited exception involving Doris's health insurance. This provision is valid and enforceable. In *Staple v Staple*, 241 Mich App 562, 578; 616 NW2d 219 (2000), this Court held that "the statutory right to seek modification of alimony may be waived by the parties where they specifically forgo their statutory right to petition the court for modification and agree that the alimony provision is final, binding, and nonmodifiable." Accordingly, the trial court erred by declining to enforce the spousal support provision to which the parties agreed.

Finally, the trial court erred by failing to enforce the life insurance and attorney fee provisions of the consent judgment. The consent judgment stated that any rights either party had as a named beneficiary in a life insurance policy "are continued without change." Regarding attorney fees, the consent judgment provided, "[I]f Doris Johnson needs to resort to court action to enforce this Judgment, Karl Johnson shall be obligated to pay her attorney fees and court costs reasonably incurred in said actions." On remand, the trial court shall determine the amount of attorney fees and costs that Doris reasonably incurred pursuing her motions to enforce the consent judgment, as opposed to defending against Karl's divorce complaint. Because Doris's request for

attorney fees at the divorce hearing was limited to those fees authorized under the consent judgment, the trial court did not err to the extent that it denied attorney fees that Doris did not incur in an effort to enforce the consent judgment.  Accordingly, we reverse in part and remand for further proceedings consistent with this opinion.

Reversed in part and remanded.  We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Brock A. Swartzle
/s/ Christopher P. Yates